**Ellen STENSON, Individually and on behalf of all other persons similarly situated, Plaintiff,**

v.

**Barbara BLUM, Individually, and in her capacity as Commissioner of the New York State Department of Social Services, Blanche Bernstein, Individually and in her capacity as Commissioner of the New York City Department of Social Services, and Joseph Califano, Jr., Secretary of the Department of Health, Education and Welfare, Individually and as Secretary, Defendants.**

No. 78 Civ. 6044(RWS).

United States District Court,
S. D. New York.

Sept. 18, 1979.

---

The Legal Aid Soc., New York City, for plaintiff and intervenors.

Robert Abrams, Atty. Gen. of the State of New York, New York City, for defendant Blum by Marion R. Buchbinder, Asst. Atty. Gen., New York City, of counsel.

Joseph M. Armstrong, Sp. Asst. Corp. Counsel, New York City, for defendant Bernstein by Henry M. Adler, New York City, of counsel.

Robert B. Fiske, Jr., U. S. Atty., S. D. New York, New York City, for defendant Califano, Jr. by Thomas D. Warren, Sherry J. Leiwant, Asst. U. S. Attys., New York City, of counsel.

SWEET, District Judge.

Plaintiff Ellen Stenson ("Stenson") has moved individually and on behalf of other persons similarly situated, for declaratory and injunctive relief against Barbara Blum, individually and in her capacity as Commissioner of the New York State Department of Social Services ("State defendant"), Blanche Bernstein, individually and in her former capacity as Commissioner of the New York City Department of Social Services ("City defendant"), and Joseph Califano, former Secretary of the Department of

Health, Education and Welfare ("HEW"), individually and in his capacity as Secretary ("Federal defendant" or "Secretary"). Stenson seeks a declaratory judgment that termination of her Medicaid benefits without notice and opportunity for a hearing and without an *ex parte* determination of eligibility for Medicaid benefits independent of her eligibility for Supplemental Security Income ("SSI") violates the Social Security Act and regulations promulgated thereunder and also the Fifth and Fourteenth Amendments to the United States Constitution.[1] Stenson also seeks classwide injunctive relief providing that Medicaid benefits of individuals whose SSI payments have been terminated may not be suspended until their eligibility is redetermined and, if they are found to be ineligible, until they have received notice and an opportunity for a hearing.

Finally, plaintiff seeks: (a) compensatory damages for out-of-pocket medical expenses resulting from her termination from Medicaid; (b) compensatory damages for emotional distress; (c) punitive damages; and (d) attorney's fees.

The case is now before this court on Stenson's motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., State and Federal defendants' cross-motions for summary judgment pursuant to Rule 56, Fed.R.Civ.P. and City defendant's motion to dismiss[2] pursuant to Rule 12, Fed.R.Civ.P. For the reasons stated below, Stenson's motion is granted in part and denied in part;

Federal and City defendants' motions are granted in whole; and State defendant's motion is denied in part and granted in part.

Stenson is a former recipient of benefits under the Federal SSI program, 42 U.S.C. § 1381 (1976). Because she was at one time eligible to receive SSI benefits, she was then categorically eligible to receive benefits under New York State's Medicaid program. New York Social Services Law § 363 *et seq.* (McKinney's 1976). In July, 1978, Stenson was determined by the Department of HEW to be ineligible for SSI benefits. She received a notice from HEW informing her of her ineligibility and directing that any inquiries concerning continued Medicaid coverage be directed to her local Social Services Agency. Shortly thereafter, Stenson's Medicaid benefits were terminated without receipt of notice from the State and without an opportunity for a hearing. Subsequent to that termination, State defendant agreed to restore Stenson's Medicaid benefits pending resolution of this action.

On March 20, 1979, Michael Murtagh ("Murtagh") and Dorothy Wilson ("Wilson") moved to intervene as plaintiffs. Murtagh is a former recipient of Medicaid whose eligibility resulted from his eligibility for SSI. Following his termination from SSI, Murtagh, although continuing to receive a monthly Medicaid card from New York State, was orally informed that his

---

1. Because resolution of Stenson's claim is based on statutory grounds, it is inappropriate to resolve her constitutional claim. A district court should decline to adjudicate constitutional claims if the controversy can be resolved on statutory grounds. Thus, in *Hagans v. Lavine,* 415 U.S. 528, 543, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1973), the Supreme Court stated that "the latter [statutory] claim was to be decided first and the former [Constitutional claim] not reached if the statutory claim was dispositive;" *See Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1967); *King v. Smith,* 392 U.S. 309, 313, 332–334, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1967); *cf. County Court of Ulster County v. Allen,* —— U.S. ——, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979). While the court recognizes that Stenson states a claim under the Constitution, this opinion will refer only to her claims under the Social Security Act and regulations promulgated thereunder.

2. Stenson originally moved for a temporary restraining order requiring the defendants to provide her with continued Medicaid benefits pending resolution of her motions for a preliminary injunction and class certification. Federal defendant then cross-moved pursuant to Rule 12(c), Fed.R.Civ.P., for judgment on the pleadings, State defendant moved for summary judgment and City defendant moved, pursuant to Rule 21, Fed.R.Civ.P., to be dropped as a defendant. Stenson in response, cross-moved for summary judgment, whereupon Federal defendant also cross-moved for summary judgment.

Medicaid eligibility had been terminated and that his card would no longer be valid. Pending resolution of his request for a hearing concerning the termination of his SSI benefits, Murtagh has received a temporary Medicaid card. Like Murtagh, Wilson is a former recipient of Medicaid as a consequence of her eligibility for SSI. When her SSI payments were terminated by the Federal government because she had become eligible to receive Social Security disability benefits, she received a notice similar to that sent to Stenson and Murtagh regarding termination of SSI benefits. Wilson, however, received neither notice nor an opportunity for a hearing upon her termination from Medicaid. Like Stenson, Wilson has received a temporary Medicaid card from the State pending resolution of this litigation.

### Statutory/Regulatory Scheme

Title XIX of the Social Security Act, which set up the Medicaid program, was enacted in 1966 to improve state programs of medical assistance to the needy by providing additional Federal funding. Pursuant to 42 U.S.C. § 1396b, HEW offers Federal reimbursement to a participating state for a specified percentage of that state's cost of providing medical assistance under a federally approved state plan. Applicable Federal statutory provisions set forth two general groups of individuals who are eligible for such medical assistance. The first group is comprised of individuals as to whom the state is required, pursuant to 42 U.S.C. § 1396a(a)(10)(A), to extend Medicaid coverage. These individuals are defined to be "categorically needy." [3] Recipients of

SSI [4] benefits are included within the mandatory Medicaid coverage available to persons classified as categorically needy. The second group is comprised of individuals who may, at the state's option, be included in the state's Medicaid program. 42 U.S.C. § 1396a(a)(10)(C). These individuals are defined to be "medically needy." [5] Unlike a categorically needy individual under Federal regulations, a person who is medically needy is not eligible for Medicaid unless his medical expenses, when subtracted from his total income, yield a figure that is less than a ceiling specified by HEW. If such is the case, the individual will be reimbursed for his medical expenses until his income reaches the ceiling limit. At this point the individual must pay the balance of his expenses. New York State's Medicaid plan provides for aid to both categorically needy and medically needy individuals. New York Social Services Law § 366(1)(a)–(e) (McKinney's 1976).

New York State has entered into an agreement with the Secretary of HEW (pursuant to New York Social Services Law § 363–b) under which the Secretary determines Medicaid eligibility for certain individuals, including SSI recipients, sends notices of his determinations to the State on a timely basis, and notifies the State of changes in the status of these individuals. This arrangement is intended to reduce New York's cost of processing Medicaid applications by having HEW make Medicaid determinations with respect to SSI recipients. See [1972] U.S. Code Cong. & Admin. News, pp. 4989, 5182. See generally, 42 C.F.R. § 435.909 (1979).

---

3. Under 42 C.F.R. § 435.4 (1979) the "categorically needy" category is defined to include "aged, blind or disabled individuals or families and children who are otherwise eligible for medicaid and who meet the financial eligibility requirements for [Aid to Families with Dependent Children], SSI or an optional stake supplement."

4. SSI is a Federally administered program under which aged, blind, and disabled individuals with income and resources below a specified level receive monthly payments from the Federal Government. When the Secretary of HEW

determines that a recipient has become ineligible for SSI, notice of such determination, along with notice of the individual's right to appeal, are sent to that individual. 42 U.S.C. § 1383(c) (1976); 42 C.F.R. §§ 416.1403–05 (1978).

5. According to 42 C.F.R. § 435.4 (1978), " 'Medically needy' means aged, blind, or disabled individuals or families and children who are otherwise eligible for medicaid and whose income and resources are above the limits prescribed for the categorically needy but are within limits set under the Medicaid state plan."

### Class Certification

██ Pursuant to Rule 23(a),[6] in conjunction with Rule 23(b)(2), Stenson has moved for class certification. The motion is granted. The class will consist of New York State residents who received Medicaid due to their eligibility for SSI and whose Medicaid benefits have been terminated because of subsequent ineligibility for SSI without having received one or more of the following: (a) an *ex parte* determination of continued eligibility for Medicaid, independent of eligibility for SSI; (b) timely and adequate notice of such termination; (c) an opportunity for a hearing.

The class, as herein defined, is "so numerous that joinder of all members is impracticable." Rule 23(a)(1), Fed.R.Civ.P. Stenson asserts, based on Federal defendant Califano's answers to interrogatories, that there are "thousands" of individuals who fit within the specified class. In fact, the actual number of individuals in the class cannot be ascertained with certainty. The answers to interrogatories submitted by Califano, however, indicate the following: at the relevant time, there were 376,890 New York State residents receiving SSI. Between December, 1977 and December, 1978, at least 6,736 New York State residents had benefits terminated, and, in the single month between November, 1978 and December, 1978, a decrease of 1,663 recipients occurred. Based on these figures, the court has determined that the issues raised by Stenson are better resolved by class action suit than by a host of separate actions. *See Hurley v. Toia*, 432 F.Supp. 1170, 1174 (S.D. N.Y.), *aff'd without opinion*, 573 F.2d 1291 (2d Cir. 1977).

There are, in addition, "questions of law or fact common to the class." Rule 23(a)(2), Fed.R.Civ.P. Although each member of the class presents a slightly different factual situation, each presents a common legal question: whether the termination of his Medicaid benefits without receipt of an *ex parte* determination of continued eligibility for Medicaid, adequate notice, or an opportunity for a hearing violates the Social Security Act and regulations promulgated thereunder. *See Lyons v. Weinberger*, 376 F.Supp. 248, 263 (S.D.N.Y.1974); 3B *Moore's Federal Practice* ¶ 23.06–1, at 23–176, 23–180 (3d ed. 1978).

Third, Stenson's claims are "typical of the claims" of the class, Rule 23(a)(3), Fed.R. Civ.P., because all class members assert that the manner in which Medicaid benefits are terminated contravenes the Constitution and the Social Security Act.

Fourth, Stenson "fairly and adequately protect[s] the interest of the class." Rule 23(a)(4), Fed.R.Civ.P. The Court of Appeals for this circuit, in *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2d Cir. 1968) (*Eisen II*), articulated various elements which would qualify a party as an adequate representative in a class action. All of these are met in the instant action: counsel for Stenson, the Legal Aid Society, is "qualified, experienced and generally able to conduct the proposed litigation." *Id.* at 562; there is little "likelihood that the litigants are involved in a collusive suit or that plaintiff has interests antagonistic to those of the remainder of the class," *id.*; and the interest of Stenson, as a representative party, is "co-extensive with the interest of the entire class," *id.*, because all seek to enjoin defendant's actions. *See Bacon v. Toia*, 437 F.Supp. 1371, 1381 (S.D.N.Y.1977), *aff'd*, 580 F.2d 1044 (2d Cir. 1978).

The requirements of Rule 23(b)(2)[7], Fed. R.Civ.P., are also met. The defendants

---

6. Rule 23(a), Fed.R.Civ.Pro., provides:

   One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the

representative parties will fairly and adequately protect the interests of the class.

7. Rule 23(b)(2), Fed.R.Civ.Pro., provides:

   An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: . . . (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final in-

have allegedly denied class members the opportunity to have their continued eligibility for Medicaid reevaluated prior to termination and have failed to provide adequate notice of termination and of the right to a hearing. Although the reasons for the termination of SSI benefits may differ among class members, the grounds upon which defendants base their actions are the same. Moreover, because each class member has allegedly been denied the same constitutional and statutory guarantees, the relief here granted is appropriate with respect to the class as a whole.

Federal and State defendants argue that class certification is unnecessary, despite compliance with Rule 23 requirements, because the prospective effect of injunctive relief against government agencies or officers will necessarily inure to the benefit of all class members. This opposition is unconvincing, however. *See, e. g., Rodriguez v. Percell*, 391 F.Supp. 38 (S.D.N.Y.1975); *Percy v. Brennan*, 384 F.Supp. 800 (S.D.N.Y.1974). As one court has remarked: "[I]t seems advisable to cautiously safeguard the interests of the entire class by ensuring that any order runs to the class as a whole. . . . Were this unnecessary, class certification pursuant to Rule 23(b)(2) would, arguably, never be necessary."[8] *Mendoza v. Lavine*, 72 F.R.D. 520, 523 (S.D.N.Y.1976) (citations omitted).

## PROPOSED INTERVENTION

■ This court also has before it Murtagh's and Wilson's motions to intervene pursuant to Rule 24(b), Fed.R.Civ.P.[9] Murtagh and Wilson could be allowed to intervene under the terms of the Rule because like Stenson, both have been terminated from Medicaid benefits because of their termination from the SSI program, allegedly in violation of the Social Security Act. However, although Rule 24(b) should be liberally construed, granting this motion would serve no useful purpose.

Because of the court's broad definition of the class, both Murtagh and Wilson come within the scope of the relief fashioned by the court. *See Hurley v. Van Lare*, 365 F.Supp. 186 (S.D.N.Y.1973), *rev'd on other grounds sub nom. Taylor v. Lavine*, 497 F.2d 1208 (2d Cir. 1974), *rev'd. on other grounds sub nom., Van Lare v. Hurley*, 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975), wherein the district court, on facts analogous to those in the case at bar, denied a motion to intervene by individuals who fell within an existing class designation. The court reasoned that "where a suit has been designated a class action, admitting intervenors *who raise no new issues* and who fall within the class merely clutters the action unnecessarily." *Id.* at 196 (emphasis in original). The court stated that granting such a motion "would mean that any member of the class, *ipso facto*, has a right to intervene and litigate the action fully. Such a construction would render class actions just as unmanageable as some are wont to fear them." *Id.*

There is no reason to expand the number of representative party plaintiffs here.[10]

---

junctive relief or corresponding declaratory relief with respect to the class as a whole . . .

**8.** Nevertheless, defendants rely on *Galvan v. Levine*, 490 F.2d 1255 (2d Cir. 1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974), wherein the court approved a district court's denial of class determination in a suit seeking injunctive relief against a State. There, however, denial of class certification was affirmed because the State "made [it] clear that it understands the judgment to bind it with respect to all claimants; indeed, even before the entry of judgment, it withdrew the challenged policy more fully than the court ultimately [decreed] and stated it did not intend to reinstate the policy." *Id.* at 1261. In the in-

stant case, however, there has been no similar demonstration by defendants that they will apply a judgment to all persons situated similarly to Stenson.

**9.** Rule 24(b), Fed.R.Civ.Proc., provides that, "[u]pon timely application anyone may be permitted to intervene in an action: . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common."

**10.** Some courts have permitted intervention in class actions when applicants raised the same issues as the named plaintiffs on the ground that it makes little difference whether intervention is permitted or denied. *See Groves v.*

The motions by Murtagh and Wilson to intervene are denied.

## FAILURE TO PROVIDE NOTICE AND A HEARING

█ Stenson's first claim is that the State defendant[11] "has violated the Social Security Act[12] and the regulations promulgated thereunder in that it has: (1) failed to provide timely, adequate notice to individuals whose Medicaid assistance has been terminated because of their having been ineligible for SSI; and (2) failed to provide a hearing upon the termination of Medicaid.[13]

The Federal regulations promulgated under the Social Security Act explicitly require a state to provide notice and an opportunity for a hearing. 42 C.F.R. § 431.-202 (1979). More specifically, a Medicaid recipient whose assistance is to be terminated must be informed by the appropriate state agency in writing, at the time of any action affecting his claim, of his right to a hearing, and the notice must contain: "(a) [a] statement of what action the agency intends to take; (b) [t]he reasons for the intended action; (c) [t]he specific regulations that support . . . the action; . . . ." 42 C.F.R. § 431.210 (1979).[14] Additionally, with limited exceptions, "the state or local agency must mail a notice at least 10 days before the date of the action." 42 C.F.R. § 431.211. Finally, the state or local agency must grant an opportunity for a hearing to "[a]ny recipient who requests it because he believes the agency has taken an action erroneously." 42 C.F.R. § 431.-220(a)(2).

The Federal regulatory requirements must be complied with by participants in the Medicaid program, including New York State. See Yaretsky v. Blum, 592 F.2d 65 (2d Cir. 1979); Becker v. Toia, 439 F.Supp. 324, 330 (S.D.N.Y.1977); Feld v. Berger, 424 F.Supp. 1356 (S.D.N.Y.1976). To this end New York State itself purports to require that timely and adequate notice be sent to Medicaid recipients informing them of any proposed action to discontinue assistance payments,[15] and of their right, if they so request, to a fair hearing.[16]

Notwithstanding both the Federal and New York State regulations, not all SSI recipients who are about to be terminated are given notice or an opportunity for a hearing. The majority of local New York State agencies merely notifies previously terminated SSI recipients that their Medicaid benefits have been terminated and also that they may reapply for assistance. See Affidavit of Ann Moynihan, Attorney for Stenson, March 19, 1979. Only a minority of agencies sends recipients notice of intent to discontinue Medicaid because of termination from SSI and advises them of their right to a fair hearing. The agency in New York City does not notify Medicaid recipients at all of their proposed terminations. Any such practice which falls short of providing timely and adequate notice and the opportunity for a hearing violates both the letter and the spirit of the Federal and New York State regulations.

The contract between the State and the Secretary, under which the Secretary agrees to determine the Medicaid eligibility of SSI recipients, does not alter the State's obligations in this regard. The Secretary has agreed to make such determinations

---

Insurance Co. of North America, 433 F.Supp. 877, 888 (E.D.Pa.1977); Epstein v. Weiss, 50 F.R.D. 387 (E.D.La.1970).

11. In her complaint, plaintiff alleges that Federal and City defendants have also acted in a manner violative of the Social Security Act. Given our disposition, however, there is no need to consider the culpability of the other parties.

12. 42 U.S.C. §§ 1396 et seq. (1976).

13. See footnote 1, supra.

14. The requirements for adequate notice by the state are set forth in 42 C.F.R. §§ 431.210–14 (1979).

15. See 18 N.Y.C.R.R. § 358.8.

16. See 18 N.Y.C.R.R. § 358.4(a)(4). Additional provisions relating to the right to a fair hearing may be found at 18 N.Y.C.R.R. §§ 358.5–8, 358.10–16.

with respect to individuals who are eligible to receive SSI payments. Nowhere in the contract, however, does the Secretary agree to re-evaluate the eligibility of Medicaid recipients who have been terminated from SSI or to notify terminated SSI recipients that their Medicaid payments have thereby been terminated. Pursuant to HEW regulations, the relevant state responsibilities include termination of medical assistance cards and the issuance of "other notices to individuals within the purview of the agreement." [17] In fact, New York State expressly contracted to "perform such other functions as are necessary to carry out the terms of the agreement." Supplemental Security Income for the Aged, Blind and Disabled Agreement between the Secretary of Health, Education and Welfare and the State of New York ("the Contract"), Article III, Clause D.[18]

The State defendant's assertion that it is relieved of its obligation to provide notice and an opportunity for a hearing, based upon *Hathaway v. Mathews*, 546 F.2d 227 (7th Cir. 1976) and *Klein v. Mathews*, 430 F.Supp. 1005 (D.N.J.1977), *aff'd in part*, 586 F.2d 250 (3d Cir. 1978), is misplaced. In neither of the cited cases had the state made a decision to terminate or suspend Medicaid benefits.

In *Hathaway*, a nursing home operator challenged HEW's right to cut off Federal funds to Medicaid patients who resided in the nursing home on the ground that the home was not in compliance with Federal standards without giving the operator an opportunity for a hearing. The State had found the home to be in compliance with applicable Federal standards and had asked HEW to reconsider its decision to stop Med-

icaid funds to the home. No regulations provided a right to a hearing before Federal financial participation was terminated. In *Klein*, the state and a group of nursing home residents who were Medicaid recipients challenged HEW's termination of Federal financial participation because HEW found the home to be in violation of Federal standards. As in *Hathaway*, the state requested that HEW reconsider its decision to cut off funds to the home.

Both *Hathaway* and *Klein* involved an HEW decision to stop Federal financial participation. In both cases that decision ran counter to the state's decision to provide Medicaid funds to the homes in question, and the state was unable to provide relief to the plaintiffs.

By contrast, the Federal government in the case *sub judice* is not seeking to impose a decision on the State and the Medicaid recipient. Rather, the Federal defendant has asserted that HEW makes no determination with respect to a recipient's continued eligibility for Medicaid benefits once SSI has been terminated. *See* § 1305 of the SSI Claims Manual attached to Defendant Califano's Supplemental Answer to Plaintiff's First Interrogatories.

Thus, *Klein* and *Hathaway* do not relieve New York State of its responsibility to continue to provide Medicaid benefits to Stenson and members of her class and to provide them with timely and adequate notice in the event a decision is made to terminate such benefits.

That HEW provides a hearing for individuals terminated from SSI does not mean that a state hearing for categorically needy

---

17. 20 C.F.R. § 416.2107 (1977).

18. The state, as noted in HEW's *Instruction on State Responsibilities for Notification to Recipients*, is responsible for: (i) giving timely and adequate notice of intended action to terminate an individual's Medicaid payments; and (ii) according such individuals the right to a hearing. Although this HEW instruction is not entitled to the same weight as are the regulations it discusses, the instruction nevertheless reflects HEW's intent concerning a state's responsibilities under the contract. *Cf. Friedman v. Ber-*

*ger*, 547 F.2d 724 (2d Cir. 1976), *cert. denied*, 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977), which, in considering the weight to be given to an HEW interpretive memorandum, noted that, "[t]his reasonable view of the statute by an agency entrusted with its execution is 'entitled to considerable deference,'" *id.* at 731 (citing *McGraw v. Berger*, 537 F.2d 719, 725 (2d Cir. 1976); *cert. denied*, 429 U.S. 1095, 97 S.Ct. 1110, 51 L.Ed.2d 542 (1977); *New York Department of Social Services v. Dublino*, 413 U.S. 405, 421, 93 S.Ct. 2507, 37 L.Ed.2d 688).

Medicaid recipients would serve no purpose. As an example, under 42 C.F.R. § 435.135, a person who becomes financially ineligible for SSI because of a cost of living increase in his Social Security benefits remains eligible to receive Medicaid benefits as a former SSI recipient. *See also*, 42 U.S.C. § 1396a (note) (1976).[19] In such a case, a state pre-termination hearing would be necessary to determine if the individual had been properly terminated from Medicaid. This court recognizes that no hearing is required under the Federal regulations "if the sole issue which would be addressed at a hearing is a Federal or State law requiring an automatic change adversely affecting some or all recipients [of Medicaid]." 42 C.F.R. § 431.220 (1979); *see, Schneider v. Whaley*, 541 F.2d 916, 918 (2d Cir. 1976) *opinion adhered to*, 548 F.2d 394 (2d Cir. 1976); *Russo v. Kirby*, 453 F.2d 548, 551 (2d Cir. 1971); *Viverito v. Smith*, 421 F.Supp. 1305, 1308 (S.D.N.Y.1976). Where, however, the central issue is whether an individual should remain eligible for Medicaid despite termination from SSI, granting an opportunity for a state hearing is essential.

Stenson also contends that the Social Security Act and regulations promulgated thereunder[20] require New York State to continue to pay Medicaid benefits to individuals in the defined class until New York State makes an *ex parte* determination of the class members' continued eligibility for Medicaid,[21] and further that if an *ex parte* decision is made to terminate an individual, payments must continue until notice and an opportunity for a hearing are given.

There is no one section in the Federal and New York State Social Security Acts which is dispositive of the question of when payment of benefits may be stopped. Many of the Federal regulations relating to whether Medicaid payments should continue pending redetermination of eligibility are applicable to a recipient who previously has been eligible for Medicaid under any of the categories of the New York State Social Security Act, including the SSI category. For example, 42 C.F.R. § 435.916(c) (1979) provides that "[t]he [state] agency must promptly redetermine eligibility when it receives information about changes in a recipient's circumstances that may affect his eligibility."[22] Another example is 42 C.F.R. § 435.930(b) (1979), which mandates that the appropriate state agency "[c]ontinue to furnish Medicaid regularly to all eligible individuals until they are found to be ineligible." As applied to the issue *sub judice*, these regulations require that upon receipt of HEW notification that an individual has been terminated from the SSI program,[23] New York must reconsider the recipient's eligibility for Medicaid. Pending this *ex parte* determi-

---

19. 42 U.S.C. § 1396a (note) (1976) provides in pertinent part:

.  .  .  [M]edical assistance under such plan shall be provided to any individual, for any month after June 1977 for which such individual is entitled to a monthly insurance benefit under title II of such Act [subchapter II of this chapter] but is not eligible for benefits under title XVI of such Act [subchapter XVI of this chapter], in like manner and subject to the same terms and conditions as are applicable under such State plan in the case of individuals who are eligible for and receiving benefits under such title XVI [subchapter XVI of this chapter] for such month, if for such month such individual would be (or could become) eligible for benefits under such title XVI [subchapter XVI of this chapter] except for amounts of income received by such individual and his spouse (if any) which are attributable to increases in the level of monthly insurance benefits payable under title II of such Act [subchapter II of this chapter] which have occurred pursuant to [cost of living increases].

20. *See* footnote 1, *supra*.

21. At this *ex parte* determination, at which the individual need not be present, the State would reconsider whether the individual is still eligible for Medicaid notwithstanding his termination from SSI. If the State determines that such individual is still eligible for Medicaid, albeit for a reason other than his status as an SSI recipient, then the State must continue to make Medicaid payments.

22. *See* page 1341, *infra*.

23. Such notification qualifies as a report indicating changes in the individual's circumstances within the meaning of 42 C.F.R. § 435.916(c) (1978).

nation, New York must continue to furnish such individuals with medical assistance.[24]

A *third relevant regulation* is 42 C.F.R. § 435.1003 (1979) which provides for continued Federal assistance to a state's Medicaid program for a period of time following Federal notification to the state that a recipient has been determined ineligible for SSI.[25] The regulation also provides that "the [state] agency must take prompt action to determine eligibility after receiving the SSA notice."

Many of the regulations now codified in Title 42 of the Code of Federal Regulations were previously contained in Title 45. For example, 45 C.F.R. § 248.4(b)(7) (1977) (recodified at 42 C.F.R. § 435.1003 (1978)), states that the purpose of providing continued Federal assistance to a state following termination of a recipient's SSI benefits is to enable the state "to determine whether he [the recipient] is still eligible for Medicaid and to allow for notification by the state to such individual of his ineligibility for medical assistance." Although this language was not explicitly included in the recodification of Title 42, HEW has unambiguously stated that the redesignated regulations merely clarify, without substantive change, the same policies contained in Title 45.[26] Furthermore, HEW's own interpretations of 45 C.F.R. § 248.4(b)(7) reveal that HEW views the purpose of this as being to allow a state:

sufficient time to determine whether the individual may still be eligible for Medicaid (*e. g. as medically needy,* as a member of an AFDC [Aid to Families with Dependent Children] family, as a needy individual under the age of 21, *or under another of the optional groups included in the plan*) . . . (emphasis added).[27]

HEW's *Medical Assistance Manual on Continued Medicaid Coverage Provisions,* Part 4–30–20.

This obligation to provide an *ex parte* redetermination of a class member's eligibility is not affected by the Contract between New York State and the Secretary under which the Secretary agrees to reevaluate a recipient's continued eligibility, because: (a) the Secretary's function is limited by the Contract to individuals who are eligible to receive SSI; and (b) the Contract binds the Secretary to furnish to the State information which is relevant to Medicaid eligibility concerning individuals who no longer qualify for SSI so as "to assist the State in carrying out its function under its Medicaid program." Contract, Article II,

---

**24.** As we hold *infra* at p. 1341 if the individual is determined ineligible for Medicaid and he requests a hearing within ten days of mailing of notice of termination, payments must continue pending resolution of the issues raised at such hearing.

**25.** 44 Fed.Reg. 17,933 (1979) (to be codified at 42 C.F.R. § 435.1003(a)) provides that if SSA notifies a state agency that an individual has been determined ineligible for SSI, Federal assistance to the state continues as follows:

(1) If the agency receives the SSA notice by the 10th day of the month, FFP [Federal assistance] is available under this section only through the end of the month unless the recipient requests a hearing under Subpart E, Part 431 of this subchapter.
(2) If the agency receives the SSA notice after the 10th day of the month, FFP is available only through the end of the following month, unless the recipient requests a hearing under Subpart E, Part 431 of this chapter.
(3) If a recipient requests a hearing, FFP is available as specified in Subpart E, Part 431 of this subchapter.

The Federal regulations also provide for reimbursement of state expenses incurred when a terminated recipient's payments are continued upon requesting a hearing. *See* Footnote 28 and accompanying text, *infra*.

**26.** *See* 43 Fed.Reg. 45,176 (1978); 44 Fed.Reg. 17,926 (1979). The preamble to the recodification of Title 45 of the Code of Federal Regulations states: "this redesignation is not intended to change policies affecting Medicaid or the other programs. Therefore, we do not intend for the States and HEW Regional Offices to interpret and apply them differently than they did before the redesignation." 44 Fed.Reg. 17,-925 (1979).

**27.** *See also HEW Instruction to SRS Regional Commissioners on State Responsibilities for Notification to Recipients,* which in interpreting 45 C.F.R. § 206.10(a)(5) (1976) (now recodified as 42 C.F.R. § 435.930 (1978), advises that "the state must continue medical assistance to terminated or suspended SSI recipients until it [the state] determines them ineligible for title XIX [Medicaid];".

Clause D. This latter provision thus contemplates a duty by the State to re-evaluate terminated SSI recipients in order to determine continued entitlement to Medicaid based upon information provided to the State by HEW.

Federal regulations also require a participating state to reinstate Medicaid benefits to a terminated recipient if the recipient requests a hearing within ten days from the mailing of a notice of termination by the State. 44 Fed.Reg. 17,933 (1979) (to be codified at 42 C.F.R. § 431.231).[28] In such a case, benefits continue pending a decision reached after the hearing. *Id.* The regulations provide for Federal assistance to the state for "[p]ayments for services continued pending a hearing decision." 44 Fed.Reg. 17,934 (1979) (to be codified at 42 C.F.R. § 431.250(a)). These regulations clearly contemplate that state Medicaid payments to a terminated recipient must be reinstated if, but only if, the recipient requests a hearing within ten days of the mailing of notice of termination by the State. If a recipient fails to request a hearing within that period, the terminated recipient can still gain a hearing by submitting a request within "a reasonable time, not to exceed 90 days from the date that notice of action is mailed." 44 Fed.Reg. 17,932 (1979) (to be codified at 42 C.F.R. § 431.221(d)); in such a case, however, the state need not reinstate benefits pending decision at the hearing, *id.* at 17,933 (to be codified at 42 C.F.R. § 431.231), nor would Federal reimbursement be available to the state if it were to do so. *Id.* at 17,934 (to be codified at 42 C.F.R. § 431.250).

In the light of these considerations, once New York State is notified by the Federal government that a member of the class has been terminated from SSI, the State is required to make an independent, *ex parte* determination of the individual's continued Medicaid eligibility. If the State determines that the individual is no longer eligible, it is required to give adequate notice to the member of the class at least ten days prior to termination in accordance with the regulations set forth at 44 Fed.Reg. 17,932 (1979) (to be codified at 42 C.F.R. §§ 431.-210–431.213). Medicaid payments must continue until ten days after mailing of notice. If a hearing is requested within that ten days, New York State must reinstate benefits to the individual pending a decision following the hearing pursuant to 44 Fed.Reg. 17,932 (1979) (to be codified at 42 C.F.R. § 431.231). Although the regulations do not require New York State to reinstate Medicaid benefits to a terminated recipient who fails to ask for a hearing within ten days of the mailing of notice, the State must accord a hearing if his request meets the standards set by 44 Fed.Reg. 17,932 (1979) (to be codified at 42 C.F.R. §§ 431.220–431.221).

This court recognizes that New York State has delegated many of its responsibilities in this area to local social services departments, and that indeed at least one of these departments, New York City, is a party to this action.

This holding incorporates explicit Federal regulations governing state Medicaid programs and comports with recent decisions in this field of law. *See Brown v. Wohlgemuth,* 371 F.Supp. 1035, 1039 (W.D.Pa.),

28. 44 Fed.Reg. 17,932 (1979) (to be codified at 42 C.F.R. § 431.231) provides in relevant part:

(a) The agency may reinstate services if a recipient requests a hearing not more than 10 days after the date of action.

(b) The reinstated services must continue until a hearing decision unless, at the hearing, it is determined that the sole issue is one of Federal or State law or policy.

(c) The agency must reinstate and continue services until a decision is rendered after a hearing if—

(1) Action is taken without the [requisite ten day] advance notice . . . .;

(2) The recipient requests a hearing within ten days of the mailing of the notice of action; and

(3) The agency determines that the action resulted from other than the application of Federal or State law or policy.

New York State has implemented these regulations, which allow a class member ten days from mailing of notice by the State to demand a hearing in order to gain a continuation of benefits pending a hearing, in 18 N.Y.C.R.R. § 358.8(c)–(d).

*aff'd* 492 F.2d 1238 (3d Cir. 1974) (withholding by state of regularly scheduled welfare checks without notice violated Federal requirement that aid shall be continued regularly until an eligible individual is found to be ineligible, 45 C.F.R. 206.10(a)(5) (1978); state ordered to reinstate benefits); *Brown v. Weinberger,* 382 F.Supp. 1092, 1099 (D.Md.1974), *aff'd mem.,* 529 F.2d 514 (4th Cir. 1975) (state enjoined from terminating benefits to qualified individuals until Federal regulations complied with); *Buckles v. Weinberger,* 398 F.Supp. 931, 946 (E.D.Pa. 1975); *Saurino v. Weinberger,* 396 F.Supp. 992 (D.R.I.1972); *Sharpe v. Califano,* No. 79–1977 (S.D.N.Y. August 6, 1979) (New York State ordered to pay interim benefits to individuals whose initial application for SSI had been denied and whose request for a reconsideration hearing remained pending in excess of specified period). The result will further the policy of 42 U.S.C. § 1396a(a)(19) (1976) by assuring that the State will provide such safeguards as may be necessary to assure that " . . . [Medicaid] services will be provided in a manner consistent with . . . the best interests of the recipients." *See also, Cohen v. D'Elia,* 55 A.D.2d 617, 618, 389 N.Y. S.2d 406, 408 (2d Dept. 1976).

The procedures for termination set forth above satisfy the requirements of the Due Process Clauses of the Fifth and Fourteenth Amendments. *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Each class member whose Medicaid benefits is terminated will receive notice and an opportunity for a hearing. *Wolff v. McDonnell,* 418 U.S. 539, 557–58, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Furthermore, a class member can gain reinstatement of benefits pending a hearing by making a request within ten days of termination.

In *Mathews v. Eldridge, supra,* 424 U.S. at 335, 96 S.Ct. at 903, the Court specified that whether Due Process necessitates a pre-termination hearing turns upon a balancing of three factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional . . . procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional . . . procedural requirement would entail.

In view of the *ex parte* State redetermination of eligibility prior to cut off, the availability of reinstatement upon request within ten days of mailing of notice, and the substantial extra fiscal and administrative burden that would fall upon New York State if a pre-termination hearing were required in every case, the procedures set forth above comport with the requirements of Due Process. *See Schneider v. Whaley, supra,* 541 F.2d at 919–22 (upholding similar procedures for termination of day care services).

### DAMAGES

■ Finally, Stenson seeks $15,000 in damages, reasonable attorney's fees, and the costs and disbursements incurred in connection with this litigation. Based on *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), Stenson's request for monetary damages is denied. The *Edelman* Court, dealing with a class action for injunctive and declaratory relief against state officials who administered the Federal-State program of Aid to the Aged, Blind and Disabled, held that "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Id.* at 663, 94 S.Ct. at 1356. *See Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Fitzpatrick v. Bitzer,* 427 U.S. 445, 451, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 462–463, 464, 65 S.Ct. 347, 89 L.Ed. 389 (in which Court noted the exception that by an appropriate statute a state may expressly waive its immunity from suit). Although this action was filed against defendants individually and in their capacity as government officials, New York State is the real party in

interest and can therefore invoke its sovereign immunity. *See Ford Motor Co., supra* at 464, 65 S.Ct. 347. Therefore, Stenson is not entitled to recover monetary damages.[29]

Stenson is entitled to recover reasonable attorney's fees from New York State pursuant to 42 U.S.C. § 1988, which provides in pertinent part: "In any action or proceeding to enforce a provision of sections . . . 1983, . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." Stenson's entitlement to attorney's fees is unaffected by the fact that this court bases its holding in part on the constitutional claim. *See Holley v. Lavine,* 605 F.2d 638, 646 (2d Cir. 1979); *Gagne v. Maher,* 455 F.Supp. 1344, 1348 (D.Conn. 1978); *Southeast Legal Defense Group v. Adams,*[30] 436 F.Supp. 891, 895 (D.Or.1977).

For the foregoing reasons, New York State is hereby enjoined to restore Medicaid benefits to Stenson and members of her class until such time as New York State[31] determines whether the individual class members remain eligible for Medicaid on a ground other than categorical eligibility, until such individuals receive timely and adequate notice of the proposed termination of their Medicaid benefits, and until they are accorded the opportunity for a hearing. *See Kimble v. Solomon,* 599 F.2d 599 (4th Cir. 1979) (injunction requiring state to restore benefits prospectively pending proper notice and hearing does not violate Eleventh Amendment).

New York State shall pay to Stenson the reasonable attorney's fees incurred by her in the prosecution of this action.

For the foregoing reasons, Stenson's motion for summary judgment is granted in part and denied in part. The motions by the Federal defendant (for summary judgment) and by the City defendant (to dismiss) are granted and the motion by New York State is granted in part and denied in part, as indicated above.[32] Stenson shall within ten days hereof, submit to the clerk of the court a proposed judgment, on ten days' notice, consistent with this opinion.

IT IS SO ORDERED.

---

**29.** The sovereign immunity doctrine does not, however, preclude this court's holding, *supra,* that Medicaid payments may not be terminated by New York State until after an appropriate determination of an individual's continued Medicaid eligibility is made. As noted in *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979), "a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury." *See also Kimble v. Solomon,* 599 F.2d 599 (4th Cir. 1979).

**30.** The *Adams* court held that 42 U.S.C. § 1988 sanctions an award of attorney's fees where, as here, both fee and non-fee claims are raised and the plaintiff prevails on the non-fee claim.

As used herein, a non-fee claim is a claim which does not fall within 42 U.S.C. § 1988, but which is joined with constitutional claims for which attorney's fees may be recovered pursuant to section 1988. As the court in *Adams* noted, "it seems manifestly unfair to penalize plaintiffs who couple their constitutional claims with meritorious statutory claims and thereby facilitate the federal policy of avoiding unnecessary constitutional decisions. To deny such plaintiffs the attorneys' fees to which they might otherwise be entitled frustrates rather than promotes the policy of the Act." *Id.* at 895.

**31.** *See* page 1342 *supra.*

**32.** *See* footnote 2 *supra,* and text accompanying footnote 2.