**MASSACHUSETTS ASSOCIATION OF OLDER AMERICANS, et al., Plaintiffs, Appellees,**

v.

**COMMISSIONER OF PUBLIC WELFARE, Defendant, Appellant.**

**No. 86–1126.**

United States Court of Appeals, First Circuit.

Argued Sept. 5, 1986.

Decided Oct. 15, 1986.

Thomas E. Noonan, First Deputy General Counsel, Dept. of Public Welfare, Hyde Park, Mass., with whom Francis X. Bellotti, Atty. Gen., and E. Michael Sloman, Asst. Atty. Gen., Government Bureau, Boston, Mass., were on brief, for defendant, appellant.

J. Paterson Rae, Western Massachusetts Legal Services, for plaintiffs, appellees.

Before CAMPBELL, Chief Judge, BOWNES and TORRUELLA, Circuit Judges.

BOWNES, Circuit Judge.

The Massachusetts Commissioner of Public Welfare, defendant-appellant, appeals from a district court order holding him in civil contempt. The district court found that defendant violated an injunction contained in a so-called Partial Final Judgment issued on May 25, 1983, the judgment having been issued in accordance with the decision of this court in *Massachusetts Ass'n of Older Americans v. Sharp*, 700 F.2d 749 (1st Cir.1983). The Commissioner contends that his implementation of the judgment does not violate the injunction, and, moreover, that, read in conjunction with the contempt finding's remedial order, the terms of that judgment are too vague to constitute a valid exercise of judicial authority. We affirm the district court's ruling.

### I. *Prior Proceedings*

The injunction allegedly violated stems from a challenge to the Massachusetts Department of Public Welfare's practice of automatically terminating a person's Medicaid benefits when his or her Aid to Families with Dependent Children (AFDC) or Supplemental Security Income (SSI) benefits were terminated. AFDC and SSI recipients, the "categorically needy," 42 C.F.R. § 435.4 (1985), are automatically eligible for Medicaid, 42 U.S.C. § 1396a(a)(10)(A) (1982). A state participating in the Medicaid program may also choose to provide assistance to other people, known as the "medically needy," 42 C.F.R. § 435.4, whose income is too large to qualify for other federal financial assistance programs. Thus, in Massachusetts, which has so chosen, Mass.Gen.Laws Ann. ch. 118E, § 1 (Supp.1986), recipients may lose their status as "categorically needy" and yet retain their Medicaid benefits as "medically needy."

The Massachusetts Department of Public Welfare ("the Department") had been fol-

lowing a policy of terminating Medicaid for recipients upon their termination from AFDC or SSI and advising them that they could reestablish their eligibility for Medicaid by filing an independent application for that program. A challenge to this practice was brought in United States District Court for the District of Massachusetts as a class action. A subclass of the certified class sought and was denied a preliminary injunction to prevent the termination of its members' Medicaid benefits. The subclass appealed the denial of its motion to this court. We reversed, remanding to the district court with instructions to grant the preliminary injunction, *Massachusetts Ass'n of Older Americans v. Sharp* ("*Sharp*"), 700 F.2d at 754. On May 25, 1983, the district court issued a Partial Final Judgment, covering the entire certified class, which ordered the Department to continue Medicaid benefits to those terminated from AFDC or SSI pending reexamination of their cases for verification of continuing eligibility.

The Department responded to the Partial Final Judgment by converting AFDC and SSI recipients who had had their benefits terminated to an appropriate "medically needy" category of Medicaid and continuing to provide Medicaid benefits without interruption. It then reexamined the cases to verify continuing eligibility for those benefits. The Department's conduct of this reexamination process, the history of which was the reason for the contempt citation, proceeded differently in the case of former AFDC, as opposed to former SSI, recipients.

For AFDC cases, the Department initially had Medicaid workers reexamine the files of the terminated recipients. Based on the materials in the file, the worker would take one of three actions: make a determination of Medicaid eligibility or ineligibility; request further information from the recipient if necessary to complete the file; or schedule a full redetermination if

eligibility could not be otherwise determined. If, after this procedure, the recipient was found to be ineligible, he or she would be terminated from Medicaid. If the recipient was determined to be eligible, Medicaid entitlement was considered to be established as of the day after the AFDC termination and a full redetermination was scheduled for six months after that date.

This verification system essentially remained unchanged until September, 1984.[1] At that time, the Department, without informing the district court, the plaintiffs or the public, modified its procedures by dividing the AFDC cases into three categories. First, if AFDC benefits had been terminated for unearned excess income or excess assets, continuing eligibility for Medicaid was determined by computer and the recipient sent the appropriate notification. Second, if the AFDC case had been terminated for reasons that suggested that the recipient would soon reestablish AFDC eligibility, and therefore Medicaid eligibility, no action was taken for thirty days. If this reestablishment did not occur, the recipient was sent a "redetermination form," requesting information relating to eligibility. This form, mailed out at regular intervals to all Medicaid recipients as part of verification of continuing eligibility, requested information substantially identical to that requested of new applicants for Medicaid. The third category consisted of the remaining recipients terminated from AFDC; they were sent Medicaid redetermination forms at the same time as their AFDC termination.

As to SSI recipients whose benefits had been terminated, the Department's reexamination process, implemented after the Partial Final Judgment, remained unchanged throughout the period at issue. Upon termination from SSI, recipients were mailed a Medicaid redetermination form by the Department.

For those former AFDC and SSI recipients sent redetermination forms, continued

---

1. The Department integrated a computer into the system in October, 1983, but did not change the basic method of verification.

Medicaid eligibility depended solely on the information provided on those forms. The Department did not make a prior assessment of the information in the recipient's current file. If the redetermination form was not returned to the Department within thirty days, the Department sent notice of the termination of Medicaid benefits. The notice also advised the recipient of the opportunity to request a hearing.

In April, 1985, the plaintiffs requested the district court to hold the Department in contempt. They alleged that the Department had failed to obey the Partial Final Judgment for AFDC terminations since September, 1984, and had never complied with the court's order regarding the SSI cases. Plaintiffs contended that the Department's practice was substantially similar to its prejudgment practice of notifying recipients at the time of their termination from AFDC that they could reestablish Medicaid eligibility by filing an independent Medicaid application. Plaintiffs claimed, and the Department did not dispute, that, at least with regard to the terminated AFDC cases, recipients had often undergone a redetermination just prior to their termination from that program. There was testimony to the effect that the various requests for information confused recipients and were often duplicative. The Department, on the other hand, contended that the continuation of benefits, the possibility of redetermination, and the opportunity to request a hearing distinguished its practice from that of the prejudgment period. It also offered the results of a Department study which indicated that, in cases where recipients were terminated for failure to provide information, the requested information had not already been available in the case file.

## II. *Standard of Review*

We first consider the appropriate standard of review for civil contempt, about which the parties disagree. The general rule subjects the grant or denial of a motion for contempt to the discretion of the trial court, whose decision is only reviewable for an abuse of that discretion. *Massa-*

*chusetts Ass'n for Retarded Citizens v. King* 668 F.2d 602, 607 (1st Cir.1981); *Donald F. Duncan, Inc. v. Royal Tops Manufacturing Co.*, 343 F.2d 669, 669–70 (7th Cir.1965). It is assumed that a trial court will consider the gravity of any exercise of the contempt power, which, as the Supreme Court has noted, is a "potent weapon." *International Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76, 88 S.Ct. 201, 208, 19 L.Ed.2d 236 (1967).

The general rule must be adapted to the context in which a particular case arises. Thus, as we have observed, the "wide variety of circumstances in which contempt proceedings may arise" has led to "differing articulations of the standard of review." *AMF, Inc. v. Jewett*, 711 F.2d 1096, 1101 (1st Cir.1983). For example, because a consent decree entered into by private parties must be interpreted according to principles analogous to those involved in contract interpretation, "[c]ourts of appeal have considerable freedom to review the district court's determination of such matters, which are often characterized, whether or not correctly, as 'questions of law.'" *Id.* at 1100. On the other hand, in examining a decree issued in public law litigation, as in the present case, the appellate court should recognize that broad "judicial discretion may well be crucial" for the district judge to secure "complex legal goals." *Id.* at 1101. In such cases, the district judge often must undertake a "continuing" involvement in the case, an involvement requiring flexibility both in the formulation of the decree and in the determination of the appropriate response to ensuing requests for "enforcement or modification of the original order in light of changing circumstances." Chayes, *The Role of the Judge in Public Law Litigation*, 89 Harv. L.Rev. 1281, 1292–98 (1976); *Massachusetts Ass'n for Retarded Citizens v. King*, 668 F.2d at 607–08.

Finally, the reviewing court's deference to the district court's manner of enforcing compliance with the decree must vary according to the substantive matter at issue.

In *Fortin v. Commissioner of Mass. Dep't of Public Welfare*, 692 F.2d 790, 795 (1st Cir.1982), we noted:

> In the present case, the interest at stake—entitlements to subsistence-level benefits—is great, *see Mathews v. Eldridge*, 424 U.S. 319, 340–43, 96 S.Ct. 893, 904–06, 47 L.Ed.2d 18 (1976); *Goldberg v. Kelly*, 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970), making the consequences of failure to comply quite serious.

These considerations concerning the "interest at stake" and the "consequences" of compliance or a failure to comply are certainly applicable to the matter now before us since it involves financial assistance to the needy for medical services.

### III. *The Contempt Finding*

In light of the foregoing principles, we consider whether the district court has abused its discretion in its formulation of the Partial Final Judgment, in its finding of a violation of the judgment's terms and in its use of the contempt power to enforce compliance with those terms. The Partial Final Judgment issued by the district court stated:

> (1) The defendant's present practice of automatically terminating the medicaid benefits of any recipient whose AFDC or SSI benefits are terminated, is hereby declared to be invalid.
>
> (2) The defendant is enjoined permanently from terminating the Medicaid benefits of any recipient whose AFDC or SSI benefits have been or are about to be terminated, unless and until he has first:
>
> > (a) Determined on the basis of facts in the recipient's case file that the recipient no longer meets the eligibility criteria for receiving Medicaid benefits; and
> >
> > (b) Provided the recipient with written notice of the proposed termination, at least ten days in advance of the effective date of the proposed termination, which notice must explain: (i) the precise reasons for the termination, including a citation to the regulations on which it is based; (ii) the recipient's right to a fair hearing to challenge the Medicaid termination and the manner in which such a fair hearing may be requested; and (iii) that, if the recipient's fair hearing is filed by a date certain (which date must be no earlier than ten days from the date on which notice is provided), the recipient's Medicaid benefits will be continued pending the fair hearing decision.

Appellant contends that the Department's method of verifying continuing eligibility through the use of redetermination forms is not excluded by the language of § 2(a) of the Partial Final Judgment. Specifically, he argues that the redetermination form, once submitted by the recipient, may be considered to be a "fact in the case file" and that the failure to submit the form may also be viewed as such a "fact."

The Partial Final Judgment was issued pursuant to our decision in *Sharp*, 700 F.2d 749. We stated our holding in part as follows:

> The case is remanded to the district court with instructions to issue forthwith a preliminary injunction reinstating the Medicaid benefits ... [and] requiring redetermination of Medicaid eligibility prior to termination of benefits....

*Id.* at 754. Appellant contends that this language, particularly the words, "requiring redetermination," supports the acceptability of the Department's method of reconsidering the terminated recipients' Medicaid status.

In reaching our conclusion, however, we made reference to a closely related case, a reference which clarifies the meaning of the above paragraph:

> In *Stenson v. Blum*, 476 F.Supp. 1331 (S.D.N.Y.1979), *aff'd without opinion*, 628 F.2d 1345 (2d Cir.), *cert. denied*, 449 U.S. 885, 101 S.Ct. 239, 66 L.Ed.2d 111 (1980), the District Court for the Southern District of New York was confronted with an issue that is nearly identical to the one presented in this case. ... In a comprehensive and well-reasoned opinion, Judge Sweet concluded that [federal] regulations require the state agency,

upon receipt of notification of an individual's termination from SSI, to reconsider the recipient's eligibility for Medicaid benefits. Pending this *ex parte* determination the state must continue to furnish such individuals with Medicaid benefits....

We agree with the *Stenson* court's conclusion as appropriate to the case before us.

*Sharp,* 700 F.2d at 752–53.

It seems clear that the district court designed the language of the Partial Final Judgment, requiring a redetermination "on the basis of facts in the recipient's case file," to conform to our approval in *Sharp* of the *Stenson* requirement of an *"ex parte* determination" by the defendant. The *Stenson* court, as well as this court, used "determination" and "redetermination" explicitly in connection with an *ex parte* procedure, which is contrary to the Department's interpretation of redetermination: a detailed form to be submitted by the recipient.[2] An *ex parte* procedure, such as, for example, the Department's own initial postjudgment system for AFDC cases, does not forbid the request of additional information when necessary. It does, however, place the onus on the Department to examine the case file either to make a decision concerning eligibility or to determine the need for additional information. The consistent line running from *Stenson* to our own earlier decision and the Partial Final Judgment was further extended by the language of the contempt finding: "Terminating the recipients without first looking at the file is the vice...."

Appellant, citing Federal Rule of Civil Procedure 65(d), further contends that the remedial order, issued by the district court on the contempt finding, when read together with the Partial Final Judgment, fails due to its vagueness. The provisions of Rule 65(d) mandating that an order granting an injunction be "specific in [its] terms" are "no mere technical requirements" and are "designed to prevent uncertainty and confusion." *Schmidt v. Lessard,* 414 U.S. 473, 476, 94 S.Ct. 713, 715, 38 L.Ed.2d 661 (1974). The Supreme Court has defined the contours of this standard in several cases striking down injunctions. In *Schmidt, id.* at 474, 94 S.Ct. at 714, the order provided that "judgment ... is entered in accordance" with an opinion which merely stated that plaintiff is "entitled to ... injunctive relief." And in *International Longshoremen's Ass'n, Local 1291,* 389 U.S. at 74, 88 S.Ct. at 207, the Supreme Court found that the order mandated compliance with "an abstract conclusion of law."[3]

■ Unlike the decrees in those cases, the Partial Final Judgment here satisfies the requirements of Rule 65(d). Given the consistency between the various court orders in this case, and in view of the fact that the Department's initial postjudgment treatment of AFDC terminations conformed with those orders, we cannot agree that the Partial Final Judgment was too vague to sustain as an exercise of judicial discretion.

---

**2.** Appellant cites *Stenson,* 476 F.Supp. at 1339 and n. 23, to support his contention that federal regulations require the practice challenged in this case. 42 C.F.R. § 435.-916(c) (1979), which requires an agency to "redetermine eligibility" when there is a change of circumstance "that may affect" eligibility, was explicitly cited by *Stenson* in connection with an *ex parte* determination. Moreover, both parties in this case agree that termination from AFDC or SSI is largely irrelevant in relation to the *fact* of Medicaid eligibility, though it may affect a recipient's categorization as "medically" or "categorically" needy. It should be noted that we reached our decision in *Sharp,* 700 F.2d at 752–53, by reading § 435.916(c) in conjunction with § 435.-930(b), which requires the state agency to "continue to furnish Medicaid regularly to all individuals until they are found to be ineligible." Finally, appellant's fear of federal financial sanctions, due to an increased error rate caused by the court order, does not seem justified by the evidence before us, especially in view of our reading of §§ 435.-916(c) and 435.930(b). *See also* 45 C.F.R. § 205.10(b)(3) (1985): "Federal financial participation is available for ... [p]ayment of assistance within the scope of Federally aided public assistance programs made in accordance with a court order."

**3.** The Court also noted that the district judge in that case "steadfastly refused to explain the meaning of the order." *International Longshoremen's Ass'n,* 389 U.S. at 71, 88 S.Ct. at 205.

Appellant claims that the remedial order on the contempt finding confuses the meaning of the Partial Final Judgment and requires disparate treatment for AFDC and SSI terminations without providing a sufficient explanation of the different procedures. For AFDC cases, the remedial order essentially instructs the Department to return to the system it had initially adopted in response to the Partial Final Judgment. For SSI cases, the order provides that the Department,

a) Either, within thirty (30) days of this Order complete arrangements with the Social Security Administration so that the Department will have and utilize access to any former recipient's file for the purpose of determining, pursuant to the procedures set forth in AP/ADM–83–56 and MA–TN 62, that person's current ongoing eligibility for Medicaid benefits; or

b) Continue the Medicaid benefits of any such person for no less than four months before scheduling that person for a Medicaid redetermination.

The first option provides for a system of reexamination basically similar to that provided for in the case of AFDC terminations: an *ex parte* determination of continuing eligibility, followed in six months by a redetermination which would be required of any Medicaid recipient. The Department has delegated the responsibility for determination and redetermination of Medicaid eligibility for people who receive SSI benefits to the Social Security Administration. Therefore, to conduct the *ex parte* examination of the files of those terminated from SSI, the Department must first obtain access to those files from the Social Security Administration. The second option allows the Department to forego the initial *ex parte* file examination by simply continuing the benefits for four months before scheduling a redetermination.

The order does not specify the reason for this second option. Its presence in the order, however, does not support appellant's contention that a different procedure for SSI terminations, as opposed to AFDC terminations, is *required*. The specific instructions in the order, including the second option, flow reasonably from the contempt finding's statement of "the reasons for its issuance," Fed.R.Civ.P. 65(d). The contempt finding was issued because, as the district court stated, the Department had attempted to "shift the burden," for ensuring continued Medicaid benefits after an AFDC or SSI termination, "to recipients, and the First Circuit Court of Appeals has stated that it may not do so." The four-month option probably relates to the fact that in SSI cases the files must be obtained from the Social Security Administration before an *ex parte* determination can be made. We do not see how a reasonable option can constitute an abuse of discretion.

We find that the Department failed to comply with the terms of the Partial Final Judgment. If the Commissioner of Public Welfare felt that those terms were inappropriate, he should have sought relief in the form of a modification of the Partial Final Judgment under Federal Rule of Civil Procedure 60(b). The district court did not abuse its discretion by enforcing compliance through the contempt sanction and remedial order.

*Affirmed.*

LEVIN H. CAMPBELL, Chief Judge (concurring).

I concur in the court's opinion. I think the district court reasonably found that the Department was not adhering to the terms of the injunction contained in the Partial Final Judgment.

I wish to emphasize, however, that our opinion should not be read as tying the state to cumbersome, wheel-spinning administrative procedures. We say that appellant violated the injunction because it sought a whole new application from an applicant without first checking his or her file to see if, on the basis of existing data, medicare benefits should be continued. But I do not read our opinion as preventing the Department from requesting a beneficiary to furnish additional information when existing file data is inadequate or is questionable, nor from cutting off benefits

if new data is not provided by some reasonable deadline.

I also do not read our opinion as preventing the Department from moving to amend the terms of the Partial Final Judgment or the district court's present contempt order if it believes that the mandated procedures are technically unworkable or ambiguous, and that better procedures can be implemented consistent with the intent of *Massachusetts Ass'n of Older Americans v. Sharp*, 700 F.2d 749 (1st Cir.1983). It was not the purpose of *Sharp* to cause medicare benefits to be paid to ineligible receivers for any longer than strictly necessary to ensure that all eligible receivers enjoy their entitled benefits without needless interruption. Nor is it the purpose of *Sharp* or the present opinion to prevent the implementation of efficient cost-effective administrative procedures provided only they do not cut off the substantial rights of medicare recipients. Thus, if the Department feels that changes in the present court orders must be made, consistent with the law as laid down in *Sharp*, in order to provide better administration, it should feel free to bring such proposed changes to the attention of the district court, and the district court should give the matter careful attention.