**INMATES OF SUFFOLK COUNTY JAIL, et al., Plaintiffs, Appellees,**

v.

**Dennis J. KEARNEY, et al., Defendants, Appellants.**

**No. 90–1858.**

United States Court of Appeals, First Circuit.

Heard Feb. 5, 1991.

Decided March 21, 1991.

Chester A. Janiak, with whom Walter M. Foster and Burns & Levinson, were on brief, Boston, Mass., for appellant, Sheriff of Suffolk County.

Jon Laramore, Asst. Atty. Gen., and James M. Shannon, Atty. Gen., on brief, Boston, Mass., for Massachusetts Com'r of Correction, amicus curiae.

Lynn Weissberg with whom Max D. Stern and Stern & Shapiro, were on brief, Boston, Mass., for appellees, Inmates of Suffolk County Jail.

Jane S. Schacter, Mark Simonoff, and Hill & Barlow, on brief, Boston, Mass., for Women's Bar Ass'n of Mass., amicus curiae.

Before BREYER, Chief Judge, CAMPBELL and TORRUELLA, Circuit Judges.

BREYER, Chief Judge.

In 1971 the inmates of the Suffolk County jail sued the Sheriff and the Massachusetts Commissioner of Correction, and others, claiming that overcrowded conditions at the Charles Street jail violated the federal Constitution. *See Inmates of Suffolk County Jail v. Eisenstadt*, 360 F.Supp. 676 (D.Mass.1973), *aff'd*, 494 F.2d 1196 (1st Cir.), *cert. denied*, 419 U.S. 977, 95 S.Ct. 239, 42 L.Ed.2d 189 (1974). In 1979 all the parties entered into a consent decree, providing, in relevant part, that the defendants would

> construct, maintain and operate as applicable a new facility for the detention of *both males and females* who are committed to the custody of the defendant Sheriff prior to and pending their trials and de novo appeals.

Consent Decree at 2 (emphasis added). Eventually, the Commonwealth built a new jail, which opened, in Boston on Nashua Street, in May 1990. But, by the time it opened, the need for jail capacity had grown—to the point where the new jail was too small. In order to make more efficient use of space in the new jail, the Sheriff decided to use it to house only men. He has pointed out that, if he wishes to use the jail to house *any* female prisoner, then (to maintain proper segregation) he must set aside an entire cell block for women. Yet, he adds, he cannot find enough female prisoners to fill even the smallest block of regular holding cells (which houses 34 prisoners) let alone the special cell block in the jail constructed especially for women (which would house 40). Consequently, to avoid wasted space, he decided to keep female prisoners in jail in Framingham (as he has done since 1973) and not to transfer them to Nashua Street.

The plaintiffs, a class of Suffolk County inmates, brought this action in federal district court. They complained that the Sheriff's refusal to transfer female prisoners to Nashua Street violated the consent decree. The district court agreed. It ordered the Sheriff to transfer female prisoners to Nashua Street, and it specified in the order that he may not transfer "female detainees" from Nashua Street "to other institutions unless more than forty female detainees are committed to his custody," in which case he can reduce the number held at Nashua Street to forty. The Sheriff did not ask the district court to modify the decree. Rather, he has simply appealed the district court's order, challenging the district court's interpretation of the decree.

The Sheriff's basic argument is that, given the operational need, the decree does not prohibit him from keeping all female prisoners in Framingham. But, like the district court, we do not understand how that is so. The language of the decree quite clearly says that he will "construct, maintain and operate as applicable a new facility for the detention of both males *and* females...." (emphasis added). The plaintiffs in the original suit, brought in 1971, included women, as well as men. The original 1973 order, which provided for transfer of women from the old, overcrowded Charles Street jail to Framingham, explicitly said that this housing arrangement was "temporary" and added "in the sense that the parties are directed to continue their planning for construction of a new jail...." Judge Garrity's Order of November 12, 1973 at 3.

The Sheriff argues that the decree was not meant to permit the federal district court to oversee the "operational management" of the new jail. Assuming that the decree does not authorize the district court to interfere with daily management decisions, we still do not see how the Sheriff can reconcile his "male only" prison with the decree's language. He has offered no assurance that the "male only" condition is

temporary, nor given jail population problems, does that seem likely. Rather, he would like to operate a "male only" jail for the foreseeable future. And, any such operation—from the jail's opening day without any now foreseeable temporal limit—is inconsistent with the decree's language, requiring the Sheriff to "construct" and to "maintain," as well as to "operate," a jail for "both males and females."

The Sheriff also argues that the two words "as applicable" make a difference. (The whole sentence in the decree says that the "defendants [the Commissioner, the Sheriff, the Mayor, and City Councillors] shall construct, maintain and operate *as applicable* a new facility for ... both males and females...."*) The Sheriff says the "as applicable" language refers to state law, which permits him to *transfer* "female prisoners" to Framingham "if suitable facilities are not available" in the relevant county. Mass.Gen.Laws ch. 125, § 16. As naturally read, however, the words "as applicable" refer to the preceding words, "construct, maintain and operate," for *different* defendants would seem likely responsible for supervising these different activities (i.e., the Mayor and the City Council for construction and the Sheriff for operations). The Sheriff points to nothing elsewhere in the consent decree, nor does he point to any extrinsic evidence, that might lead us to accept his reading of those two words.

Finally, the Sheriff, and the Massachusetts Attorney General, point to case law indicating that we are to review the district court's decision *de novo, see AMF, Inc. v. Jewett,* 711 F.2d 1096, 1100 (1st Cir.1983); *South v. Rowe,* 759 F.2d 610, 613 (7th Cir.1985), that we should interpret a consent decree in public litigation flexibly and broadly to achieve its basic purposes, *see Massachusetts Ass'n for Retarded Citizens, Inc. v. King,* 668 F.2d 602, 607–08 (1st Cir.1981), and that courts should not unduly interfere with the daily management of state jails and prisons. *Cf. Bell v. Wolfish,* 441 U.S. 520, 548, 99 S.Ct. 1861, 1879, 60 L.Ed.2d 447 (1979) ("operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches ..., not the Judicial"). Accepting all this law, however, we still do not see how the Sheriff can overcome the plain language of the decree, which specifies that the new jail is for women as well as for men.

The Sheriff points out that the district court attached other conditions to its order, and in particular a condition that requires him to house women in Nashua Street jail until their number exceeds 40. The Sheriff has asked us to order the district court to modify this condition. We are uncertain, however, about the facts that underlie the Sheriff's request. In his affidavit, the Sheriff says that the average number of female detainees in his custody is between 12 and 15—numbers that imply considerable wasted space at the new jail. At oral argument, however, the parties agreed that more recently up to 37 women have been detained at the new jail, suggesting that there is considerably less wasted space.

Obviously, the need to avoid wasted space is important. The district court, however, has specifically said that it would consider motions for modification of its conditions, to avoid any such waste. It wrote in its order:

> The court makes clear that it is not holding that cells must remain unused because a 40–cell unit for female prisoners was built and fewer than 40 female Suffolk County detainees are in custody. The Sheriff's submissions to this court indicate that the Sheriff is to some extent using as regular detention cells for males some cells originally designed for specialized uses. If alternative arrangements that meet the conditions of the Consent Decree, within the new facility, can be developed to avoid nonuse of some cells, the court is prepared to consider a showing that such a modified plan of usage is in compliance with the Consent Decree.

Order of Judge Keeton, at 7–8.

Moreover, any of the parties is free to request modification of the decree itself in light of changed circumstances. As the

district court itself noted, courts in public law cases

> often must undertake a "continuing" involvement in the case, an involvement requiring flexibility both in the formulation of the decree and in the determination of the appropriate response to ensuing requests for "enforcement or modification of the original order in light of changing circumstances."

Order of Judge Keeton at 6–7 (quoting *Massachusetts Ass'n of Older Americans v. Commissioner of Public Welfare*, 803 F.2d 35, 38 (1st Cir.1986) (quoting Chayes, *The Role of the Judge in Public Law Litigation*, 89 Harv.L.Rev. 1281, 1292–98 (1976) and citing *Massachusetts Ass'n for Retarded Citizens, Inc. v. King*, 668 F.2d 602, 607–08 (1st Cir.1981))). Consequently, we believe that motions for changing the conditions attached to the district court's order, or the decree itself, are properly addressed, not to this court, but to the district court in the first instance.

For these reasons, the determination of the district court is

Affirmed.

LEVIN H. CAMPBELL, Circuit Judge (concurring).

I write separately to emphasize the limited nature of the issue that we decide in this appeal. The Sheriff has not requested modification of the consent decree; rather, he rests his argument solely on an interpretation of the language of the original decree itself. Our opinion, therefore, deals only with the correct interpretation of the decree. We do not consider whether the current problems of overcrowding provide good grounds for modifying the decree.

I say this lest there be any doubt that this court appreciates the seriousness of the problems faced by jail administrators. The Sheriff's argument based on the growing demand for jail space and the need to use existing facilities more efficiently would require very close scrutiny in the context of a request for modification of the decree rather than of a request simply to interpret the existing decree. Courts are bound to remember that judicial oversight of jails—even including oversight through the consent decree medium—is limited by the nature of our mission: that mission is to ensure that those facilities meet the requirements of the Constitution. Beyond what is proper to that end, we lack authority to interfere with the lawful discretion of state officials to manage jail facilities as they see fit. Thus, our response to the Sheriff's arguments concerning the changing prison population must be understood in the context of the limited issue presented in this appeal.