TIMBERS, Circuit Judge:
 

 The United States (“appellant”) appeals from an order entered March 3,1989 in the United States District Court for the District of Massachusetts, A. David Mazzone,
 
 District Judge,
 
 responding to objections by appellant to a plan submitted by the Commonwealth of Massachusetts (“appellee” or “Commonwealth”) to improve conditions at Worcester State Hospital, held that the plan complied with the terms of a consent decree entered into between the parties and approved by the court on August 25, 1987. The court also held that appellee’s efforts to provide staffing for the hospital, despite a slight shortfall, complied with the decree’s mandate.
 

 On appeal, appellant argues: (1) that application of standard principles of contract interpretation compels us to rule that ap-pellee’s plan does not comply with the consent decree; and (2) that the staffing deficit is a substantial defect under the decree.
 

 For the reasons set forth below, we affirm the district court’s order.
 
 [1]
 

 I.
 

 We summarize only the prior proceedings and facts believed necessary to an understanding of the issues raised on appeal.
 

 Appellee operates Worcester State Hospital, a facility for the mentally ill. In 1985, appellant commenced an action against the Commonwealth pursuant to 42 U.S.C. § 1997
 
 et seq.
 
 (1988) (Civil Rights of Institutionalized Persons Act), alleging that conditions at the hospital violated the due process rights of its patients. The parties eventually reached a settlement agreement, which emerged as a consent decree when the district court endorsed it on August 25, 1987.
 

 The consent decree consists of five substantive sections. Section one contains definitions of the relevant terms. Section two is a statement of the decree’s five purposes and objectives.
 
 [2]
 
 Section three requires that the hospital attain certain staffing ratios within six months of the entry of the decree, including registered nurse-patient and licensed practical nurse-patient ratios of 1:35 per shift, but states that appellee will not be in contempt of the agreement for good faith failure to meet the ratios due to unavoidable circumstances. Section four lists thirteen problem areas in the hospital that relate to the overall objectives, and requires that appellee submit a plan with “specific terms and reasonable
 
 *509
 
 detail” to address them. Section five, on construction and implementation of the plan, leaves the specific means to achieve compliance to appellee.
 

 The decree called for appellee to submit the plan by October 24, 1987, to be implemented no later than February 25, 1988. Appellant had until December 23, 1987 to file objections to the plan. Appellee timely filed its plan. Appellant objected to it, claiming that it did not contain the specificity and detail mandated by the decree.
 

 The plan indeed is sketchy in several areas. For example, where the decree calls for a description of procedures to assure periodic professional evaluations of each hospital resident, the plan states that the hospital “will adopt a policy” to provide for the necessary evaluations. There are several other sketchy provisions.
 

 The district court held a hearing on the adequacy of the plan on January 15, 1988. The court observed that the plan was a bit sparse on details, but deferred resolution of the dispute. Instead it asked appellee to provide further documentation
 
 [3]
 
 and appointed two compliance monitors to assure that appellee actually was implementing the improvements. The monitors eventually submitted two reports, dated January 9 and March 30, 1989, respectively. Both offered suggestions for improvement, but expressed general satisfaction with the hospital’s progress. The latter report stated that “[t]he Plan has provided a broad-based blueprint for this change.”
 

 Both parties agree that the hospital failed to meet the staffing ratios by the deadline set by the decree. The monitors, however, perceived no serious problem with staffing, despite failure to meet the ratios provided in the decree and the continuing use of temporary agency nurses.
 

 Although conditions were improving at the hospital, the parties failed to agree on the adequacy of the plan. On October 24, 1988 appellant moved by order to show cause for enforcement of the plan and staffing ratios and for a contempt judgment against appellee. The court heard arguments on the contempt issue on February 7, 1989 and ruled in appellee’s favor the same day. On March 3, 1989, it entered a memorandum and order finally approving appellee’s amended plan.
 
 [4]
 

 II.
 

 In a commercial context, a consent decree may be treated like a contract.
 
 United States v. ITT Continental Baking Co.,
 
 420 U.S. 223 (1975). As a result, it should be construed primarily by reference to the four corners of the instrument. Thus an appellate court is given “considerable freedom” to review the findings of the district court in regard to a consent decree.
 
 AMF Inc. v. Jewett,
 
 711 F.2d 1096, 1100 (1st Cir.1983). Appellant appears to place itself in the position of a private party to an agreement, complaining that it has not received the “benefits of the bargain” to which it is entitled. Appellant, however, is not really the recipient of the benefits of this bargain. The success of the consent decree and subsequent plan should be judged by their effect on the patients at the hospital.
 

 Recognizing that in public litigation the beneficiaries are commonly third parties, several appellate courts have held that district courts, which are responsible for overseeing the execution of consent decrees, should have broad discretion in determining whether the objectives of the decree have been substantially achieved. We have stated that “in examining a decree issued in public law litigation ... the appellate court should recognize that broad ‘judicial
 
 *510
 
 discretion may well be crucial' for the district judge to secure ‘complex legal goals.' ”
 
 Massachusetts Ass’n of Older Americans v. Commissioner of Public Welfare,
 
 803 F.2d 35, 38 (1st Cir.1986) (quoting
 
 AMF, supra,
 
 711 F.2d at 1101).
 
 See also Twelve John Does v. District of Columbia,
 
 861 F.2d 295, 298 (D.C.Cir.1988);
 
 New York State Ass’n for Retarded Children v. Carey,
 
 706 F.2d 956, 970 (2d Cir.),
 
 cert. denied,
 
 464 U.S. 915 (1983). We of course are still required to scrutinize the terms of appellee’s plan in light of the decree, but we should do so with deference to the district court’s intimate understanding of the history and circumstances of this litigation.
 

 III.
 

 In view of the foregoing, we turn to the question whether the plan is consistent with the consent decree. The district court held that “the plan, if implemented, is adequate to protect the constitutional rights of residents at the hospital”. The court stated that its function in the litigation was to assure that any constitutional violations at Worcester State Hospital were corrected— the precise scope of the consent decree.
 

 The parties agree that the text of the plan addresses every problem area set forth in the decree. Appellant, however, seeks much more. It would like a detailed, step-by-step explanation of how appellee intends to implement the improvements so that it can seek judicial intervention for each deviation. That is the reason appellee did not include in the body of the plan the documentation on policies and procedures which do provide such detail. Appellee construed section five of the decree, leaving to it the means of compliance, as allowing it to omit details on policies and procedures. Appellant, on the other hand, argues that the “specific terms and reasonable detail” required by section four requires at least that the district court revise the plan to incorporate the policies and procedures.
 

 The district court observed the apparent conflict between these sections of the decree and resolved it in favor of appellee. We agree. The principle that, in cases where expertise is required, qualified professionals must be free to exercise their judgment within constitutional confines is firmly rooted in our jurisprudence.
 
 E.g., Youngberg v. Romeo,
 
 457 U.S. 307, 322-23 (1982);
 
 Parham v. J.R.,
 
 442 U.S. 607-08 (1979);
 
 Santana v. Collazo,
 
 793 F.2d 41, 43 (1st Cir.1986). The district court did not abuse its discretion in construing an ambiguous decree to conform with that principle.
 

 That the detailed policies and procedures are not set forth in the plan does not render it useless, as appellant asserts. The district court properly ordered that appel-lee provide all relevant documentation for inspection by appellant so that it could “continue monitoring the hospital’s progress in fulfilling the objectives” of the decree.
 

 We are mindful, as was the district court, that the intended beneficiaries of this litigation are the residents of Worcester State Hospital, and the progress at the hospital informs our judgment. To satisfy the consent decree, appellee must not only submit an adequate plan, it must implement it as well. The independent compliance monitors appointed by the district court have twice indicated their satisfaction with that implementation. The district court approved their findings. We do not find them to be clearly erroneous. With improvements at the hospital proceeding apace, the district court understandably was reluctant to let prolonged litigation interrupt it. We share that view.
 

 IV.
 

 To summarize:
 

 We hold that the district court did not err in determining that the plan submitted by the Commonwealth conforms to the requirements of the consent decree. We also hold that, while the Commonwealth has not complied with the decree’s staffing ratios, the district court was within its discretion
 
 *511
 
 in determining that such non-compliance does not constitute contempt.
 

 AFFIRMED.
 

 [1]
 

 . Appellant combined its objections to appellee’s plan with a motion for civil contempt because of appellee’s alleged dilatoriness in complying with the consent decree. The district court denied the motion. Appellant raises the contempt issue on appeal, but in light of our holding that appellee’s actions do comply with the decree, we find it neither necessary nor appropriate to reach that issue.
 

 [2]
 

 . "1. Treatment and training programs professionally designed to reduce or eliminate unreasonable risks to personal safety or unreasonable use of bodily restraints and developed by qualified professionals shall be afforded to all residents whom it is determined by qualified professionals are in need of such programs in order to reduce or eliminate such risks.
 

 2. That degree of care must be provided which is sufficient to protect all residents from unreasonable risks to their personal safety both by the conduct of staff and of other residents, and from unreasonable use of bodily restraint.
 

 3. Adequate food, clothing, shelter, and medical care must be afforded all residents.
 

 4. Psychotropic medications must be prescribed and administered to residents pursuant to the exercise of professional judgment by a qualified professional.
 

 5. The physical environment of the facility shall not pose unreasonable risks, including fire safety risks, to the personal safety of residents."
 

 [3]
 

 . Appellant concedes that appellee’s documentation furnishes many of the details lacking in the plan, but argues that, because the documentation is not formally part of the plan, it is irrelevant to the question whether the plan complies with the decree.
 

 [4]
 

 . The court also ruled that, despite appellee’s failure to comply literally with the staffing requirements, a contempt citation was not warranted since appellee had made a good faith attempt to meet the requirements. While appellant has not pressed the point vigorously on appeal, we hold for the sake of completeness that the court's finding of good faith is not clearly erroneous.