**LITTLE ROCK SCHOOL DISTRICT,**
Appellant,

v.

**PULASKI COUNTY SPECIAL SCHOOL DISTRICT NO. 1, Appellee.**

No. 94–2070.

United States Court of Appeals,
Eighth Circuit.

Submitted May 26, 1995.

Decided July 12, 1995.

Christopher Heller, Little Rock, AR (John C. Fendley, Jr. on the brief), for appellant.

Samuel Jones, III, Little Rock, AR, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, HEANEY, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

RICHARD S. ARNOLD, Chief Judge.

The Little Rock School District (LRSD) appeals the District Court's order requiring it to pay to the Pulaski County Special School District (PCSSD) $167,113 in majority-to-minority (M–to–M) payments received from the State of Arkansas. The record before us is wholly inadequate to enable us to determine whether the Pulaski County School Desegregation Case Settlement Agreement was violated, and, if so, by whom. We vacate the order of the District Court and remand this case for an evidentiary hearing and further findings of fact.

Under the Settlement Agreement, the State is obligated to pay the cost of educating all interdistrict students. This mandate is accomplished by the State's paying to the receiving district, the district to which the student transfers, the per-pupil cost of each student whose race is in the majority in her home district who transfers to an interdistrict school where she will be a minority-race student. In addition, the State pays to the sending district, the district from which the student transfers, one-half of the amount of money the district would have received had the student remained in her home district. These payments are known as "M–to–M payments."

The Settlement Agreement directs the use of these M–to–M payments.

[A]ll M–to–M payments generated by Interdistrict School students paid by the State to LRSD and PCSSD (including payment to each district as sending district and receiving district), except transportation payments, will be pooled for the education of all Interdistrict School students. The instructional budgets of the Interdistrict Schools will be equalized. This provision does not change each district's obligation to construct and maintain the Interdistrict Schools within its boundaries.

Settlement Agreement § II ¶ O(3).

Thus, all M–to–M payments generated by interdistrict school students and paid by the State to either LRSD or PCSSD are to be

"pooled." The very next sentence of the Settlement Agreement mandates that the "instructional budgets of the Interdistrict Schools will be equalized." It seems to be undisputed that $167,113 of these funds paid to LRSD for the 1992–1993 school year have not been "pooled." It also appears that LRSD spends more money per interdistrict pupil than does PCSSD.

PCSSD filed a motion with the District Court asking that LRSD be ordered to pay PCSSD the $167,113. LRSD responded that it did not have to make this payment because PCSSD had notified it that the instructional budgets could not be "equalized," which amounted to an anticipatory breach, relieving LRSD of the obligation to pool the funds. This conclusion is necessary, according to LRSD, because the whole purpose of the pooling agreement was to enable equalization of the budgets. Equalization, it is argued, means that the same amount will be spent per interdistrict pupil by both LRSD and PCSSD.

The District Court, however, agreed with PCSSD that these two phrases "simply happen to appear in the same section of the Settlement Agreement ...," and are not related. Thus, the District Court, without a hearing of any sort, ordered LRSD to pay the $167,113 over to PCSSD. The Court noted that, while this calculation worked to the benefit of PCSSD, future calculations might benefit LRSD, depending on the shift in the balance of M–to–M transfers.

 Neither the opinion of the District Court, nor the record on appeal, nor the briefs of the parties contain enough information to enable us to decide this case. To tell the truth, we are not even sure what the issue is. The parties have argued the case in almost completely abstract terms. The issue, they say, is whether the two promises in the paragraph quoted above—the promise to pool funds and the promise to equalize instructional budgets—are dependent on each other or independent of each other. PCSSD argues, and the District Court apparently agreed, that the promises are independent. Accordingly, LRSD must make the $167,113

payment regardless of whether PCSSD is fulfilling its obligation to equalize the instructional budget. We are not satisfied with this abstract approach. The interpretation of a consent decree should be a practical enterprise, influenced, perhaps, by technical rules of construction, but not controlled by them. On the basis of the materials before us, we are not even sure what equalization of instructional budgets means. Nor are we sure what the intention of the parties was as to the interrelationship, if any, of the two contested parts of the settlement agreement. Furthermore, the agreement provides that certain funds shall be "pooled," but the order of the District Court is simply that LRSD must pay the funds to PCSSD. This is a payment by one party to another, not a payment into any sort of "pool."

To those who are versed in the day-to-day administration of this Agreement we have no doubt said enough already to demonstrate our lack of understanding of the appeal. Ordinarily, we would set the case for oral argument and discuss it in open Court with counsel until the matter came clear in our minds.[1] Our next regular argument session, however, does not occur until September, and we are unwilling to wait that long for a resolution of this dispute. Accordingly, we vacate the order of the District Court and remand this cause with the following instructions.

The District Court should take evidence regarding the purposes of the clauses at issue. Was the pooling agreement a means to facilitate equalization, whatever equalization is? If so, then it seems that the two clauses are, as LRSD contends, dependent on one another. If, on the other hand, pooling has some other purpose, PCSSD's position may prevail. In either event, a hearing is necessary to determine who is right. The Settlement Agreement is ambiguous, to say the least.

Furthermore, the term "equalize" is not defined in the Settlement Agreement or the District Court's order. LRSD claims that it means to spend the same amount for the instruction of each interdistrict pupil. That may, indeed, be its meaning, a meaning we

---

1. Both sides have waived argument. Such a waiver, of course, is not binding on this Court.

consider completely logical. But evidence should be taken and a finding made regarding the meaning of this term.

Once the term is defined, the District Court should then determine whether the budgets are equalized. LRSD asserts that they are not. PCSSD's only assertion is that LRSD did not prove that they are not. The District Court should take evidence and make a finding on this point.

If the budgets are not equalized, presumably certain consequences will follow. One consequence might be that LRSD may retain the funds in question. Another might be that LRSD is entitled to an order directing equalization. It is impossible to know what those consequences are, however, until we know what the term means, and whether it has been met.

We note, also, that the District Court's order requires LRSD to pay the money in question to PCSSD. That requirement is somewhat perplexing given that the Settlement Agreement requires pooling of all M-to-M funds. It seems that, if anything, LRSD should have to place these funds into a central account. Does such an account exist? If so, why is not the money to be paid into that account? If it does not exist, why not?

The order of the District Court is vacated. This action is remanded to the District Court so that a hearing may be held and findings made consistent with this opinion. Thereafter, any party aggrieved may file a new appeal.