Laaman v. Powell                        CV-75-258-SD  12/05/95
              UNITED STATES DISTRICT COURT FOR THE

                    DISTRICT OF NEW HAMPSHIRE


Jaan Laaman, et al

                                        Civil No. 75-258-SD
    v.                                             77-256-SD
                                                   87-301-SD

Ronald Powell, et al


                          O R D E R

     Since 1976 this court has supervised litigation concerning
the conditions of confinement at the New Hampshire State Prison
(NHSP) in Concord, New Hampshire.  Through the diligent and
conscientious efforts of (now Senior Circuit) Judge Bownes,
consent decrees entered in the cases of Laaman v Helgemoe, No.
75-258, and Guay v. Perrin, No. 77-256, on August 10, 1978, have
well served to preserve the constitutional rights of the inmates
at NHSP.

     By medium of motion for contempt filed on June 15, 1993, two
weeks before this court's jurisdictional oversight was scheduled
to expire, plaintiffs, inmates at NHSP, charged the defendants,
supervisory correctional officials at NHSP, with failure to

comply with the terms of the consent decrees[1] entered into between the parties. With the eve of trial on the merits of the contempt motion fast approaching, the court ordered the parties to submit briefs concerning the standard by which NHSP's compliance with the consent decrees is to be measured. These briefs have been filed accordingly, and the court now turns to the merits of same.

## Discussion

The parties have isolated two issues for pretrial resolution by the court concerning the standard of compliance with the consent decrees. To wit, these issues are:

> 1. Whether defendants are required to be in full compliance or substantial compliance with the Consent Decrees.
> 2. Whether defendants are required to be in compliance with each section of the Consent Decree or merely in substantial compliance with the Consent Decree as a whole.

Plaintiffs' Brief Regarding Standard of Compliance at 1; see also Memorandum of Defendants on Measure of Compliance at 1-2.

---

[1]On May 16, 1990, the parties herein entered into a second consent decree, which was approved by this judge, and which provided, inter alia, that the court should retain jurisdiction over this prison litigation until July 1, 1993, subject to further extension upon a showing that "substantial compliance" with its terms had not been achieved. 1990 Consent Decree ¶ 9. Said consent decree was approved on July 20, 1990.

## 1.  Full or Substantial Compliance

In conducting its inquiry over the present matter, the court is ever mindful of the prudential wisdom that "[t]he interpretation of a consent decree should be a practical enterprise, influenced, perhaps, by technical rules of construction, but not controlled by them."  Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1, 60 F.3d 435, 436 (8th Cir. 1995); see also Ricci v. Okin, 537 F. Supp. 817, 824 (D. Mass. 1982) ("The court, in assessing efforts to comply with the decrees, should not apply inflexible, absolute standards, particularly where elaborate and complex performance is called for.").

As the First Circuit has most recently observed,

> In all types of institutional reform litigation, federalism concerns dictate that any "intrusion by a federal court into the affairs of local government should be kept to a bare minimum and not be allowed to continue after the violation has abated and its pernicious effects have been cured."

Inmates of Suffolk County Jail v. Rufo, 12 F.3d 286, 292 (1st Cir. 1993) (quoting Mackin v. City of Boston, 969 F.2d 1273, 1276 (1st Cir. 1992), cert. denied, ___ U.S. ___, 113 S. Ct. 1043 (1993)); accord Kindred v. Duckworth, 9 F.3d 638, 644 (7th Cir. 1993) ("Whatever may be the life expectancy of federal consent decrees, respect for the principle of separation of powers

3

suggests that decrees imposing obligations upon state institutions normally should be enforceable no longer than the need for them.").

a. Plaintiffs' Burden and Defendants' Efforts

In ruling on a motion for civil contempt of a consent decree, it is incumbent on the "complainant [to] prove civil contempt by clear and convincing evidence." Langton v. Johnston, 928 F.2d 1206, 1220 (1st Cir. 1991) (citing AMF, Inc. v. Jewett, 711 F.2d 1096, 1100 (1st Cir. 1983)); see also Porrata v. Gonzalez-Rivera, 958 F.2d 6, 8 (1st Cir. 1992) ("A motion for contempt will be granted only if the complainant can offer clear and convincing evidence that a lucid and unambiguous consent order has been violated.") (citations omitted); Murphy v. Timberlane Regional Sch. Dist., 855 F. Supp. 498, 517 (D.N.H. 1994) (same).

More particularly, the Circuit has noted that "substantial compliance can avert a finding of contempt." Langton, supra, 928 F.2d at 1220; accord Dunn v. New York State Dep't of Labor, 47 F.3d 485, 490 (2d Cir. 1995) ("failure to meet the strict requirements of an order does not necessarily subject a party to a holding of contempt"); NLRB v. A-Plus Roofing, Inc., 39 F.3d 1410, 1418 (9th Cir. 1994) ("substantial compliance purges civil

4

contempt") (citation omitted). Moreover, a finding of contempt will be averted upon a finding that "the decrees here at issue, like most such decrees, were susceptible to satisfaction by diligent, good faith efforts, culminating in substantial compliance." Langton, supra, 928 F.2d at 1220 (citing and quoting, inter alia, Howard Johnson Co. v. Khimani, 892 F.2d 1512, 1516 (11th Cir. 1990) ("Conduct that evinces substantial, but not complete, compliance with the court order may be excused if it was made as part of a good faith effort at compliance.")) (emphasis added).

In this regard, although "'substantial compliance' . . . is not vitiated by 'a few technical violations' where every reasonable effort has been made comply," Go-Video, Inc. v. Motion Picture Ass'n of Am. (In re Dual-Deck Video Cassette Recorder Antitrust Litig.), 10 F.3d 693, 695 (9th Cir. 1993) (quoting Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc., 689 F.2d 885, 891 (9th Cir. 1982)), the "'substantiality' of compliance [does] depend[] upon 'the nature of the interest at stake and the degree to which noncompliance affects that interest,'" Morales-Feliciano v. Parole Bd., 887 F.2d 1, 4 (1st Cir. 1989) (quoting Fortin v. Commissioner of Mass. Dep't of Pub. Welfare, 692 F.2d 790, 795 (1st Cir. 1982)), cert. denied, 494 U.S. 1046 (1990).

5

b.  Measure of Compliance

It is against this legal backdrop that the court considers the first of the two issues herein presented: whether defendants must be in full or substantial compliance with the terms of the consent decrees.  In the view of the court, upon consideration of not only the relevant caselaw but also the very terms of the continuing jurisdiction paragraph, see 1990 Consent Decree ¶ 9, defendants will avoid a contempt finding upon a showing of "substantial compliance" with the terms of the consent decrees. That is to say, no contempt order shall issue so long as the defendants can demonstrate to the court that they have undertaken a "diligent, good faith effort[]" to achieve compliance with the terms of the decrees, and such efforts have culminated in substantial compliance with same.  See Langton, supra, 928 F.2d at 1220; Board of Education v. Dowell, 498 U.S. 247, 248 (1991)) (consent decrees "are not intended to operate in perpetuity," but rather become subject to dissolution "after the local authorities have operated in compliance with [them] for a reasonable period of time").


2.  Particularly or Generally Compliant

To begin, as there exists a general recognition that

> in public litigation the beneficiaries are
> commonly third parties, several appellate

6

> courts have held that district courts, which are responsible for overseeing the execution of consent decrees, should have broad discretion in determining whether the objectives of the decree have been substantially achieved.

<u>United States v. Commonwealth of Mass.</u>, 890 F.2d 507, 509 (1st Cir. 1989). It is further recognized "'that [this] broad "judicial discretion may well be crucial" for the district judge to secure "complex legal goals,"'" <u>id.</u> at 509-10 (quoting <u>Massachusetts Ass'n of Older Am. v. Commissioner of Public Welfare</u>, 803 F.2d 35, 38 (1st Cir. 1986) (quoting <u>AMF</u>, <u>supra</u>, 711 F.2d at 1101)), and, accordingly, any appellate review of the district court's determination will be conducted "with deference to the district court's intimate understanding of the history and circumstances of [the] litigation," <u>id.</u> at 510.

Before terminating a consent decree, or entering a finding of substantial compliance such that the court's supervisory duties become extinguished, the district court must undertake a two-part inquiry.

> First, the district court must determine that the underlying constitutional wrong has been remedied, either fully or to the full extent now deemed practicable. Second, there must be a determination that the authorities have complied with the decree in good faith for a reasonable period of time since it was entered.

<u>Rufo</u>, <u>supra</u>, 12 F.3d at 292 (citing, inter alia, <u>Dowell</u>, <u>supra</u>,

7

498 U.S. at 249-50;[2] see also Freeman v. Pitts, 503 U.S. 467, 489 (1992) ("the court's end  purpose must be to remedy the violation and in addition to restore state and local authorities to the control of [an institution] that is operating in compliance with the Constitution").  "Implicit in these requirements is the need for the district court, before terminating the decree entirely, to be satisfied that there is relatively little or no likelihood that the original constitutional violation will promptly be repeated when the decree is lifted."  Id. at 292 (citing Dowell, supra, 498 U.S. at 247).

"In the context of civil rights litigation, a central consideration in determining whether to dissolve structural remedies is whether the [entity] in question has come into compliance with constitutional requirements."  Mackin, supra, 969 F.2d at 1275; see also Langton, supra, 928 F.2d at 1217 ("a finding that the [defendant] was in substantial compliance with the decrees would perforce establish the absence of any constitutional abridgment . . . .").  "Put another way, an inquiring court should ask whether the goals of the litigation,

---

[2]The First Circuit has repeatedly "cited to Dowell's principles in cases pertaining to conditions at correctional facilities . . . [noting that] many of the same considerations [occurring in the desegregation cases] appear to be relevant to other types of institutional reform litigation."  Rufo, supra, 12 F.3d at 291 (citations omitted).

8

as incorporated in the outstanding decree, <u>have been completely achieved</u>."  <u>Id.</u> (citing <u>Dowell</u>, <u>supra</u>, 498 U.S. at 247) (emphasis added); <u>Wycoff v. Hedgepeth</u>, 34 F.3d 614, 616 (8th Cir. 1994) ("'the court must always be mindful of the [decree's] purpose . . . .'") (quoting <u>Mercer v. Mitchell</u>, 908 F.2d 763, 770 (11th Cir. 1990))) (alteration in <u>Wycoff</u>).

In pressing their argument, plaintiffs stress the <u>Mackin</u> "completely achieved" language, to the complete disregard of the phrase "the goals of the litigation."  Such a construction is unfortunate, however, since the phrase "completely achieved" serves to modify "the goals of the litigation."  The consent decrees obtained herein are the end-products of an extended negotiation process between and among the parties, the primary purpose of which was to create a framework wherein the Eighth Amendment rights of NHSP inmates would be preserved and protected.  Thus the goals of the underlying litigation, as expressly indicated by plaintiffs and embodied in the consent decrees, are to correct any actual or perceived violations of the Eighth Amendment rights of inmates at NHSP.[3]

---

[3]This is not to say that attaining the constitutional minimum is the sole purpose of the decrees, for it is recognized that "[c]onsent decrees often embody outcomes that reach beyond basic constitutional protections."  <u>Kindred</u>, <u>supra</u>, 9 F.3d at 641 (citing <u>Rufo v. Inmates of Suffolk County Jail</u>, 502 U.S. 367, 389 (1992), and <u>Langton</u>, <u>supra</u>, 928 F.2d at 1217-18).  "Indeed, it is a rare case when a consent decree establishes only the bare

9

The consent decrees are thus to be employed as the polestar by which the court shall conduct a "step-by-step delineation of the decree-required programs and . . . painstaking[ly] survey . . . the defendants' efforts to implement them . . . ." Langton, supra, 928 F.2d at 1218. That being said, the remedial goals incorporated into the text of the consent decrees may be deemed satisfied despite a finding that the defendants have failed to precisely comply with each and every paragraph of the consent decrees. See id. at 1222 (affirming district court finding of no contempt in light of mental health center's "notable progress" and "substantial compliance with the overall mandate of the consent decrees").

Should this court so find at the conclusion of the trial that the prison is "being operated in compliance with the commands of the . . . [Eighth] Amendment, and that it [is] unlikely that the [NHSP] would return to its former ways, [such] would be a finding that the purposes of the [correctional institution] litigation had been fully achieved." Dowell, supra, 498 U.S. at 247. Accordingly, the court further finds and rules

_____

minimum required by the Constitution." Id. Rather, the court and the parties, by virtue of the consent decrees, isolated and particularized certain NHSP practices or activities that needed to be either remedied or abated, the practical effect of which is to ensure that conditions at NHSP could withstand constitutional muster.

10

that the conduct of NHSP, as it relates to the contempt proceedings, will be measured against the standard of substantial compliance with the provisions of the consent decrees as a whole.

Conclusion

For the reasons set forth herein, it is the opinion of the court that the standard of compliance to be applied during the contempt proceedings is whether the defendants are in substantial compliance with the terms and goals of the consent decrees as a whole.

SO ORDERED.

                                       _____
                                       Shane Devine, Senior Judge
                                       United States District Court

December 5, 1995

cc:  Alan Linder, Esq.
     Mark J. Lopez, Esq.
     Daniel J. Mullen, Esq.