**LITTLE ROCK SCHOOL DISTRICT, Plaintiff,**

v.

**PULASKI COUNTY SPECIAL SCHOOL DISTRICT NO. 1, et al., Defendants,**

Mrs. Lorene Joshua, et al., Katherine Knight, et al., Servicemaster Management Services, A Limited Partnership, Intervenors.

**No. LR–C–82–866.**

United States District Court, E.D. Arkansas, Western Division.

July 30, 1996.

Christopher J. Heller of Friday, Eldridge & Clark, Little Rock, AR, for Little Rock School District.

M. Samuel Jones, III, of Wright, Lindsey & Jennings, Little Rock, AR, for Pulaski County Special School District.

*MEMORANDUM AND ORDER*

SUSAN WEBBER WRIGHT, District Judge.

Before the Court for a second time is the Pulaski County Special School District's ("PCSSD") motion to enforce the Settlement Agreement [doc. # 2063], which was filed on January 7, 1994. The PCSSD moved for an Order requiring the Little Rock School District ("LRSD") to reimburse the PCSSD $167,113, to which it claimed entitlement pursuant to the "pooling" agreement of the parties regarding Majority-to-Minority ("M–to–M") payments received by LRSD from the State of Arkansas. That agreement provides in relevant part as follows:

[A]ll M–to–M payments generated by Interdistrict School students paid by the State to LRSD and PCSSD (including payment to each district as sending district and receiving district), except transportation payments, will be pooled for the education of all Interdistrict School students. The instructional budgets of the

Interdistrict Schools will be equalized. This provision does not change each district's obligation to construct and maintain the Interdistrict Schools within its boundaries.

Settlement Agreement § II ¶ O(3).

The LRSD filed a pleading in opposition to the PCSSD's motion. The Court considered the pleadings of the parties and, on March 16, 1994, entered an Order granting the PCSSD's motion. The LRSD appealed. In an opinion filed on July 12, 1995, the Eighth Circuit vacated this Court's Order and remanded for an evidentiary hearing. *Little Rock School Dist. v. Pulaski Cty. Dist. 1,* 60 F.3d 435 (8th Cir.1995). Expressing consternation at this Court's failure to conduct a hearing "of any sort," the Eighth Circuit directed this Court to "take evidence regarding the purposes of the clauses at issue." *Id.* at 436.[1] Specifically, the Eighth Circuit directed this Court to address whether the pooling agreement was a means to facilitate equalization, what was meant by the term "equalize," whether the instructional budgets of the interdistrict schools are equalized, and whether there exists a central account into which pooled moneys are deposited. *Id.* at 436–37.

Pursuant to the Eighth Circuit's Order, this Court held an evidentiary hearing on Friday, September 8, 1995, and again on Thursday, December 14, 1995. The parties subsequently filed post-hearing briefs addressing the issues posed by the Eighth Circuit. Having considered both the evidence adduced during the hearings and the pleadings of the parties, the Court again grants the PCSSD's motion.

The first question to be addressed by this Court is whether the pooling agreement was a means to facilitate equalization. The Court notes that the pooling agreement appears to have been struck between LRSD and PCSSD as a means not only to finalize the settlement, but to settle two disputes, the first being who received the host district's

cost of educating the M–to–M student, and the second regarding disposition of the final $2,000,000 of state money. In that sense, then, the pooling agreement does appear to have been a means to facilitate equalization, *i.e.* an agreement to insure equalization of available funds to educate M–to–M students in interdistrict schools. Sept.Tr. 20–21, 32–35, 44; Dec.Tr. 16–17. The methodology that the districts have used for disbursement of pooled or available funds is as follows: for each school year, the amount of LRSD's and PCSSD's financial contribution to the pool is calculated in accordance with Paragraph O of the Settlement Agreement. Sept.Tr. 40–44. The total amount of funds in the pool for a given year is then divided by the total number of M–to–M students in the interdistrict schools in both districts to arrive at an equalized, per-student dollar amount for educating them in the interdistrict schools. Sept.Tr. 44. For each school district, the equalized per-student dollar amount is then multiplied by the number of M–to–M students hosted by that district in its interdistrict schools to determine the amount of the pooled funds to which each district is entitled. Sept.Tr. 44–45. The dollar amount which each district contributed to the pool is finally subtracted from the amount of pooled funds to which it was entitled, thereby calculating the sum to which each district is entitled. Sept.Tr. 46. The distribution from the pool is dictated totally by the number of students each respective district hosts in its interdistrict schools in a given school year. Sept.Tr. 45.

Having determined that the pooling agreement was a means to facilitate equalization, the next question to be answered is what was meant by the term "equalize." The short answer to this question is that it does not appear that any agreement has ever been made as to the meaning of this term. Nevertheless, what it most assuredly does not mean is that the same amount will be spent for the instruction of each interdistrict pupil. The LRSD argues that the term "equalize" was an attempt to guarantee that LRSD M–

---

**1.** This Court did not conduct a hearing because neither the PCSSD nor the LRSD requested one and because this Court was (and still is) concerned about the disruption caused by frequent and unnecessary hearings in this interminable

litigation. Apparently, the parties on appeal still did not desire a hearing as both sides waived oral argument. *See Little Rock School District,* 60 F.3d at 436 n. 1.

to–M students being sent to a PCSSD school would receive the same level of education they would receive in their home district, and that the suggested test for this was to equate such an equal education to the amount of money expended. While it may appear that such a meaning is "completely logical," *Little Rock School District,* 60 F.3d at 436–37, it is not grounded in either a common sense or historical reading of the provision given the factors that govern per-pupil expenditures. Indeed, sometime during the 1991–92 school year, Mr. Chip Jones, then Manager of Support Services for the LRSD, suggested to Dr. Don Stewart of the PCSSD that equalizing the instructional budgets in the interdistrict schools was "going to be a mess" because there were too many factors to account for. Sept.Tr. 22. Also, he believed, Paragraph O(3) of the pooling agreement as worded would not work because it would require building a budget that was based on a per-student amount and totally unrelated to the program needs in the school.[2] Sept.Tr. 21–22; Dec.Tr. 162. Thus, as acknowledged by the LRSD, it is impossible and impractical to equalize the budgets. Employee costs differ among the districts, the buildings in which the employees work is not dependent upon their position on the salary schedule, and the different manner in which the two districts allocate teachers and staff affects the amount of money that it costs to educate a particular child. Moreover, the number of empty seats in a particular school will affect the budget for the building and the cost of educating the students in that building since there are certain constants in any school building, regardless of its size. Thus, a school with a small enrollment is more likely to have a higher per-student cost. For these and other reasons, the instructional budgets of the interdistrict schools are not and, as a practical matter, cannot be equalized between the districts. As noted by Dr. Stewart, "nearly

everything about the way [the PCSSD and the LRSD] do business is different." Sept. Tr. 22. Indeed, there seems to be no dispute that the LRSD does not even spend the same amount of money per student in its own three interdistrict schools. Sept.Tr. 68–69.

Finally, there does not exist a central account into which pooled moneys are deposited. The pooling arrangement is not an account into which the parties deposit and withdraw funds, but, rather, a paper exercise whereby the amounts under section "O" of the Settlement Agreement are calculated. In fact, it was the LRSD that suggested the districts do a pooling agreement on paper. Sept.Tr. 21–22.

To the extent the Court's discussion of the specific questions posed by the Eighth Circuit does not clarify the matter, the Court hereby interprets the Settlement Agreement to give effect not only to the meaning the parties themselves have attached to the agreement, but in a manner that will promote voluntary interdistrict transfers, particularly to the interdistrict schools.[3] The Eighth Circuit has specifically stated that one of the elements of the Settlement Agreement it considers to be crucial, and with respect to which no retreat should be approved, is the operation of the agreed number of interdistrict schools according to the agreed timetable. *Appeal of Little Rock School District,* 949 F.2d 253, 256 (8th Cir. 1991). In this regard, the primary purpose of the M–to–M concept was to promote voluntary interdistrict transfers. PCSSD's interpretation of Paragraph O(3) would provide a financial incentive to both school districts to recruit M–to–M students to interdistrict schools, whereas the LRSD's interpretation of Paragraph O(3) would entitle the LRSD to more money for failing to recruit M–to–M students. Dec.Tr. 83, 116. Under PCSSD's methodology for disbursement of pooled funds, the more effective a district is in re-

---

**2.** To the extent there are discrepancies between the testimony of Dr. Stewart and Mr. Jones, the Court notes that Dr. Stewart's testimony regarding the pooling agreement comports with the manner in which the parties have heretofore been proceeding and is consistent with the overall goal of desegregation. Thus, all credibility determinations are resolved in favor of Dr. Stewart.

**3.** The Eighth Circuit found that "the Settlement Agreement is ambiguous, to say the least." *Little Rock School Dist. v. Pulaski Cty. Dist. 1,* 60 F.3d at 436. Hence, it is necessary for this Court to interpret the Agreement.

cruiting M–to–M students to interdistrict schools, the more money it is entitled to receive from the pool. Sept.Tr. 105–06. For these reasons, the Settlement Agreement is hereby interpreted as set forth above.

In accordance with the Court's ruling, the PCSSD is entitled to receive from the LRSD the sum of $345,294, which is the total of the yearly reimbursement amounts (FY 1991–92 through FY 1994–95) included in the PCSSD's January 26, 1996 submission. Payments which may now be due for FY 1995–96 and payments that will come due in subsequent years will be made by the owing district according to the same method of calculation as set forth in this Memorandum and Order.

IT IS THEREFORE ORDERED that the Little Rock School District reimburse the Pulaski County Special School District the sum of $345,294 within sixty (60) days of the date of entry of this Order.