NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5749-17T1

D.C. and M.L.,

     Petitioners-Appellants,

v.

DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES and ESSEX COUNTY
BOARD OF SOCIAL SERVICES,

     Respondents-Respondents.

_____

APPROVED FOR PUBLICATION

July 28, 2020

APPELLATE DIVISION

Argued February 12, 2020 – Decided July 28, 2020

Before Judges Koblitz, Whipple and Gooden Brown.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

Joshua M. Spielberg argued the cause for appellants (Legal Services of New Jersey, attorneys; Joshua M. Spielberg, Kristine Marietti Byrnes and Melville D. Miller, on the briefs).

Shereen Youssef, Deputy Attorney General, argued the cause for respondent Division of Medical Assistance and Health Services (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Jacqueline R. D'Alessandro, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

GOODEN BROWN, J.A.D.

Petitioners D.C. and M.L., a married couple, appeal from the June 27, 2018 final agency decision of the New Jersey Department of Human Services (DHS), Division of Medical Assistance and Health Services (DMAHS), adopting the decision of the Administrative Law Judge (ALJ). The ALJ determined that the Essex County Board of Social Services (Board) properly terminated the couple's Medicaid benefits under the New Jersey FamilyCare Aged, Blind, and Disabled (ABD) Program,[1] and complied with all applicable requirements, including providing timely notice that their benefits would terminate effective August 31, 2017.

On August 30, 2017, petitioners applied for the Specified Low-Income Medicare Beneficiaries (SLMB) Program. Although they qualified for the

---

[1] DMAHS's website explains that the ABD Programs are multiple programs for people who need help in the community. N.J. Dep't of Health & Human Servs., Div. of Med. Assistance & Health Servs., The NJ FamilyCare Aged, Blind, Disabled Programs, https://www.state.nj.us/humanservices/dmahs/clients/medicaid/abd/ (last visited July 6, 2020). In some cases, aged, blind, and disabled Medicaid enrollees receive medical coverage. In others, aged, blind, and disabled Medicaid enrollees, who are also low-income Medicare recipients, receive assistance in paying their monthly Medicare premiums, co-pays and deductibles. U.S. Centers for Medicare & Medicaid, Your Medicare Costs, https://www.medicare.gov/your-medicare-costs/get-help-paying-costs (last visited July 6, 2020).

SLMB Program, they were advised their application could not be processed until the ABD Program benefits were terminated. While petitioners do not dispute that they no longer qualify for the ABD Program, they contend DMAHS erred by failing to screen them for other Medicaid programs, including the SLMB Program, prior to terminating their ABD Program benefits, and by failing to transfer them from the ABD to the SLMB Program with no gap in coverage. Because State Medicaid agencies are required under federal regulations to assess beneficiaries' eligibility for other Medicaid programs before terminating benefits, we agree that petitioners should have been transferred to the SLMB Program with no gap in coverage. Accordingly, we reverse.

I.

The pertinent facts are undisputed. D.C. is disabled and received $810 per month in Social Security Disability (SSD) benefits. M.L. is also disabled and received $706 per month in SSD benefits. Because the couple resided with their son, based on their household size and combined income, pursuant to N.J.A.C. 10:72-4.1, they qualified for the ABD Program for those at or below 100% of the Federal Poverty Level (FPL). ABD Program benefits

supplemented the couple's Medicare Part B premium payment[2] by $134 per month.  However, once the couple's son turned eighteen years old in April 2017, and began attending college out-of-state in August 2017, their household was no longer considered a household of three and their income then exceeded the qualifying amount for the ABD Program under N.J.A.C. 10:72-4.4.

As a result, the Board sent the couple termination notices dated July 19, 2017, advising them that their benefits would be terminated effective August 31, 2017,[3] and the Social Security Administration (SSA) notified the couple that because the State of New Jersey would no longer pay their Medicare Part B premiums, $134 would be deducted from their SSD checks.[4]  The couple requested a fair hearing, resulting in DMAHS transferring the matter to the Office of Administrative Law (AOL) and continuing benefits pending

---

[2]  Medicare Part B covers medical services and supplies, including outpatient care, preventative services, ambulance services, and durable medical equipment.  U.S. Centers for Medicare & Medicaid, What Medicare Covers, What Part B Covers, https://www.medicare.gov/what-medicare-covers/what-part-b-covers (last visited July 4, 2020).

[3]  Because the couple did not receive earlier termination notices, the Board was directed by DMAHS to reinstate their benefits until they were properly notified.

[4]  Although SSA was notified about the earlier improper terminations and reinstatement of benefits, the SSA reimbursements did not occur for several months, depriving petitioners of needed income in the interim.

disposition.  See N.J.S.A. 52:14B-1 to -15; N.J.S.A. 52:14F-1 to -13.  See also N.J.A.C. 10:49-10.4.

Prior to the hearing, on August 30, 2017, petitioners submitted an application for the SLMB Program to the Division of Aging Services (Division), another Division within DHS.  Although it is undisputed that petitioners qualify for the SLMB Program, which allows states to pay Medicare Part B premiums for low-income Medicare beneficiaries like petitioners, the Division denied the application, stating it could not be considered until petitioners were terminated from the ABD Program.  See N.J.A.C. 10:72-4.1(b) ("Effective January 1, 1995," income limits for SLMB Program beneficiaries "will be set at 120 percent of the [FPL].").

When the couple's legal representative, Nancy Nichols, a paralegal for Legal Services of New Jersey (LSNJ), inquired whether the agency could "guarantee . . . SLMB coverage [would] begin on December 1[, 2017]," if the ABD Program benefits were "terminated" on "November 30, [2017]," the agency representative responded in writing:

> I have everything needed to process both . . . cases for SLMB and yes they are both eligible based on income and assets.  NO I cannot and will not guarantee that their SLMB coverage would begin on December 1st. First we need the Medicaid termination to go through before I can even process it and secondly Social Security and Medicare would have to update their records which is out of my hands, so I am not in a

position to say it would begin December 1st.  The only thing I can say, is once the termination from Medicaid is finalized[,] I can process it for SLMB.  If they have premiums deducted from Social Security they would be eligible to be reimbursed by Social Security.

The OAL hearing was conducted on November 27, 2017, during which petitioners conceded they no longer qualified for the ABD Program.  However, petitioners asserted DHS failed to comply with Medicaid regulations requiring "agencies that administer or process Medicaid applications . . . to also screen for other programs" prior to terminating benefits.  According to petitioners, they should have been screened to facilitate "a seamless" transition with no gap in benefit payments between the ABD and SLMB Programs.

Petitioners stated that because "SLMB applications" are processed by "a different division" within DHS, "and there does not appear to be very good communication within the Department about . . . screening . . . for other Medicaid Programs," this scenario has become "a long standing problem for thousands of individuals every year who move from a Medicaid Program into SLMB."  Although petitioners acknowledged that they would ultimately be reimbursed for any months in which their Medicare Part B premiums were deducted from their SSD checks while awaiting approval of their SLMB application, they asserted such reimbursements were paid "several months

6

later," making it difficult to "pay for rent, food[,] and other expenses" in the interim.

Denise Collison, the Fair Hearing Liaison representing the Board, confirmed that the Board provided no pre-screening for the SLMB Program. Collison asserted that when clients are no longer eligible for Medicaid programs, but may qualify for other benefits, Board representatives simply "point the clients to a telephone number" for them to inquire about eligibility for those benefits.

After accepting multiple exhibits from both parties and discussing the respective arguments on the record, without objection, the ALJ concluded there were no disputed issues of material fact and treated the case procedurally as cross-motions for summary decision. See N.J.A.C. 1:1-12.5(b). Thereafter, on March 28, 2018, the ALJ issued an initial decision affirming the termination of petitioners' ABD Program benefits. The ALJ acknowledged petitioners' heavy reliance on "Medicaid Communication No. 15-06," issued by the DMAHS Director on April 9, 2015, reminding all agencies that "prior to termination of redetermined NJ FamilyCare cases, individuals must be assessed for eligibility for all other Medicaid programs" pursuant to "the requirements of [42 C.F.R. 435.916(f)(1)]" to avoid "gap[s] in coverage." However, the ALJ determined that pursuant to N.J.A.C. 10:71-8.2(a), requiring

regular "[r]edetermination of disability . . . for every Medicaid Only beneficiary . . . except those . . . receiving SSA Disability Insurance Benefits," those requirements did not apply to petitioners because they were "[d]isability [i]nsurance recipients" under N.J.A.C. 10:71, rather than "Medicaid recipients under N.J.A.C. 10:72."

The ALJ reasoned that N.J.A.C. 10:72-1.1(c) provided "protection for beneficiaries having . . . disability status" like petitioners "who might experience a 'gap in coverage,'" by permitting "retroactive Medicaid eligibility . . . beginning with the third month prior to the month of application for Medicaid for any month during which the applicant meets all eligibility criteria and during which the applicant has unpaid medical expenses for covered services." Thus, the ALJ concluded that given the retroactivity provision, the Board and DMAHS were not precluded from "terminating [p]etitioners' ABD Medicaid benefits without first having to assess eligibility for all other Medicaid programs" to ensure that there would be no gap in coverage.

Petitioners filed exceptions, pointing out that the ALJ incorrectly identified the Medicaid program under which petitioners were receiving benefits, by referring to "N.J.A.C. 10:71," when "N.J.A.C. 10:72," in fact, applied. On June 27, 2018, the DMAHS Director issued a final agency decision adopting the ALJ's initial decision. While agreeing with petitioners

that the ALJ "incorrectly identified the [applicable] Medicaid program," the Director determined "it [did] not change the fact that [petitioners were] ineligible under any Medicaid program to receive medical benefits."

However, according to the Director,

> [w]hat they would be eligible for is to have their Medicare Part B paid for under SLMB, thus eliminating that deduction from the Social Security benefit. They were provided with information about SLMB by [the Board]. . . . However, they must be ineligible for Medicaid in order to be enrolled in the SLMB program. As they have elected to continue benefits under Medicaid, there is no termination date on the system nor does it appear that [p]etitioners provided a copy of their termination letter with their SLMB application. . . .
>
> What [p]etitioners are seeking is perfect performance of a system that relies on coordination between federal and state agencies. While that is desirable, it does not always work.

While characterizing the SLMB Program as "a Medicare savings program that allows states to pay Medicare Part B premiums," rather than a Medicaid program, the Director explained that "[p]etitioners cannot be eligible for Medicaid and SLMB in the same month." In support, like the ALJ, the Director pointed out that N.J.A.C. 10:72-1.1(c), which entitles SLMB recipients "to payment of Medicare Part B Premiums. . . , beginning in the month of application and up to three prior months," accounts for the anticipated loss of benefits during the transition from one program to the other

by allowing for up to three months of retroactive SLMB payments. According to the Director, "[w]hen Essex County enters the termination date of [ABD Program] benefits, SLMB benefits will be able to be processed," and the concomitant reduction in their SSD checks while the SLMB application is being processed will ultimately be reimbursed by Social Security.

This appeal followed, in which petitioners maintain that DMAHS "violate[d] federal Medicaid law" by "upholding the termination of petitioners' Medicaid benefits without first screening for eligibility for all Medicaid programs." Petitioners also assert that DMAHS predicated its determination that the "requirement" to screen for other programs prior to termination "[did] not apply to [them]" on the erroneous "contention that SLMB is not a Medicaid program." We agree.

## II.

We begin by addressing our standard of review. Our role in reviewing an agency decision "is limited in scope." Barone v. Dep't of Human Servs., Div. of Med. Assistance & Health Servs., 210 N.J. Super. 276, 284 (App. Div. 1986). Our task is to decide

> (1) whether the agency's decision offends the State or Federal Constitution; (2) whether the agency's action violates express or implied legislative policies; (3) whether the record contains substantial evidence to support the findings on which the agency based its action; and (4) whether in applying the legislative

policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 339 (App. Div. 2009) (quoting George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 27 (1994)).]

"Where action of an administrative agency is challenged, 'a presumption of reasonableness attaches to the action . . . and the party who challenges the validity of that action has the burden of showing that it was arbitrary, unreasonable[,] or capricious.'" Barone, 210 N.J. Super. at 285 (quoting Boyle v. Riti, 175 N.J. Super. 158, 166 (App. Div. 1980)). Furthermore, "[a]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to our deference." A.B., 407 N.J. Super. at 339 (alteration in original) (quoting Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001)).

Nevertheless, we are "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting Mayflower Sec. Co. v. Bureau of Sec. in Div. of Consumer Affairs of Dep't of Law & Pub. Safety, 64 N.J. 85, 93 (1973)). Moreover, "[w]e do not . . . simply rubber stamp the agency's decision." Paff v. N.J. Dep't of Labor,

392 N.J. Super. 334, 340 (App. Div. 2007) (citing <u>Henry v. Rahway State Prison</u>, 81 N.J. 571, 579-80 (1980)).  Instead, we will "intervene . . . in those rare circumstances in which an agency action is clearly inconsistent with its statutory mission or other state policy."  <u>In re Musick</u>, 143 N.J. 206, 216 (1996).  Here, we are satisfied DMAHS violated implied legislative policy, and rendered a flawed decision based on a factual error.

Some background on Medicaid is needed for context.  The federal Medicaid Act, under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 to 1396v, authorizes a joint federal-state program to provide assistance to individuals whose income and resources are insufficient to meet the costs for necessary medical services.  42 U.S.C. § 1396a.  <u>See</u> <u>L.M. v. N.J. Div. of Med. Assistance & Health Servs.</u>, 140 N.J. 480, 484 (1995).  Participation in the Medicaid program is optional for states; however, "once a State elects to participate, it must comply with the requirements" of the federal Medicaid Act and federal regulations adopted by the Secretary of Health and Human Services in order to receive federal Medicaid funds.  <u>Harris v. McRae</u>, 448 U.S. 297, 301 (1980).  <u>See also</u> <u>Mistrick v. Div. of Med. Assistance & Health Servs.</u>, 154 N.J. 158, 165-66 (1998).

New Jersey's participation in the federal Medicaid program was authorized by the enactment of the New Jersey Medical Assistance and Health

Services Act (MAHSA), N.J.S.A. 30:4D-1 to -19.5. Under its enabling legislation, DHS is designated as "the single State agency to administer the provisions of [the Act]," N.J.S.A. 30:4D-5, and the Director of DHS has the authority to promulgate rules, regulations, and administrative orders necessary to administer the Medicaid program. N.J.S.A. 30:4D-17.1(c). DMAHS is the agency within DHS responsible for implementing the State Medicaid program. N.J.S.A. 30:4D-4. Applications for Medicaid benefits are submitted to the county boards of social services or county welfare agencies (CWAs). N.J.A.C. 10:71-1.5; N.J.A.C. 10:71-2.1. Under DMAHS's supervision, the county boards or CWAs are responsible for reviewing applications, making annual re-determinations of a beneficiary's continuing eligibility for benefits, and recommending approval, denial, continuation, or termination of benefits. N.J.A.C. 10.71-2.2, -2.12, and -8.1.

Each state participating in the Medicaid program is "required to comply with . . . 'eligibility requirements set by the federal government,'" G.C. v. Div. of Med. Assistance & Health Servs., ___ N.J. Super. ___ (App. Div. 2020) (slip op. at 4) (quoting Zahner v. Sec'y Pa. Dep't of Human Servs., 802 F.3d 497, 512 (3d Cir. 2015)), and must adopt "'reasonable standards . . . for determining eligibility for and the extent of medical assistance . . . consistent with the objectives of the Medicaid program.'" L.M., 140 N.J. at 484 (quoting

13                                                              A-5749-17T1

42 U.S.C. § 1396a(a)(17)(A)).[5] While "[t]he provisions of Title XIX [of the Social Security Act] regarding eligibility are considerably . . . obtuse, requiring a roadmap and compass to navigate," G.C., slip op. at 7, persons eligible for participation in the Medicaid program generally fall into two classes, "the 'categorically needy,'" and the optional categories. Id. at 6-7 (citations omitted).

The categorically needy, for whom Congress mandates coverage, among others, "includes persons eligible to receive benefits under Aid to Families with Dependent Children (AFDC), 42 U.S.C.A. §§ 601-617, or Supplemental Security Income for the Aged, Blind, and Disabled under Title XVI of the Social Security Act (SSI), 42 U.S.C. §§ 1381-1383d." L.M., 140 N.J. at 485. See 42 U.S.C. § 1396a(a)(10)(A)(i); N.J.A.C. 10:69-1.1 to -12.10. Congress considered categorically needy persons to be "especially deserving of public assistance because of family circumstances, age, or disability." Mistrick, 154 N.J. at 166 (quoting Schweiker v. Gray Panthers, 453 U.S. 34, 37 (1981)).

"States may [also] opt to provide coverage to other groups of individuals." G.C., slip op. at 6 (quoting L.M., 140 N.J. at 485). "The line between mandatory and optional coverage is primarily drawn in [42 U.S.C.] § 1396a(a): mandatory

---

[5]    In New Jersey, eligibility for medical assistance is governed by the regulations adopted by the Commissioner of DHS. N.J.S.A. 30:4D-7a.

coverage is specified in § 1396a(a)(10)(A)(i), and the state options are set forth in subsection (ii)." Ibid. (quoting Skandalis v. Rowe, 14 F.3d 173, 175-76 (2d Cir. 1994)). States may elect to provide Medicaid assistance to the "medically needy," who are persons "who have income and resources that are insufficient to pay their medical expenses, but are too high to qualify them for AFDC or SSI, and who otherwise meet the nonfinancial eligibility requirements for those programs." Mistrick, 154 N.J. at 166. See also Atkins v. Rivera, 477 U.S. 154, 157-58 (1986); L.M., 140 N.J. at 487-88.

Federal law also authorizes, "at the option of the states, the provision of benefits to 'any reasonable categories' of applicants who do not otherwise qualify as categorically or medically needy." Mistrick, 154 N.J. at 167 (citing 42 U.S.C. § 1396a(a)(10)(A)(ii)). See also Skandalis, 14 F.3d at 175. Under its "Medicaid Only" program, which is governed by N.J.A.C. 10:71-1.1 to -9.5, New Jersey provides benefits to persons considered "optionally categorically needy." Mistrick, 154 N.J. at 167. "Medicaid Only" beneficiaries receive "medical care only," not "cash payments" available "to the aged, blind and disabled" under "Title XVI" of the Social Security Act. N.J.A.C. 10:71-1.1. New Jersey, like other states, also "assist[s] certain low-income [Medicare-Eligible Medicaid] beneficiaries with payment of their out-of-pocket expenses related to the Medicare program."

Wheaton v. McCarthy, 800 F.3d 282, 284 (6th Cir. 2015).  See 42 U.S.C. § 1396a(a)(10)(E)(iii).

Pertinent to this appeal, the SLMB Program, governed by N.J.A.C. 10:72-1.1, specifies "the criteria for Medicaid eligibility for certain . . . aged, blind and disabled persons not eligible under the [Medicaid Only Program]." N.J.A.C. 10:72-1.1(a).  Notably, N.J.A.C. 10:72-1.1(a)(1) provides:

> Because the eligibility criteria established by the rules contained within this chapter are more liberal than those applicable under AFDC-related Medicaid and SSI-related Medicaid, . . . aged, blind or disabled individuals losing Medicaid eligibility because of financial reasons should be evaluated under the provisions of this chapter for the possibility of continuing Medicaid eligibility.

In order to qualify for the SLMB Program, "[a]ged, blind, and disabled individuals (as defined by Title XIX of the [SSI])," must be "residents of the State, . . . receiving Medicare benefits, Parts A and B, and must meet the income and resource requirements specified in N.J.A.C. 10:72-4.1(b) and 4.5(b)."  N.J.A.C. 10:72-1.1(b)(4)(i).  "Persons determined eligible as [SLMB Program] beneficiaries are entitled to payment of Medicare Part B Premiums only, beginning in the month of application and up to three prior months." N.J.A.C. 10:72-1.1(b)(4)(iii).

"The enrollment and outreach process for [SLMB Program] beneficiaries is administered by the Department of Health and Senior Services, through the

Office of Pharmaceutical Assistance to the Aged and Disabled (PAAD), using

the standard PAAD application form." N.J.A.C. 10:72-1.1(b)(4)(ii). However,

> [DMAHS] shall promptly notify any applicant for, or beneficiary of, the [SLMB Program], in writing, of any agency decision affecting the application disposition or the receipt of the benefit. When a decision relates to any adverse action which may entitle an individual to a fair hearing, the action may not be implemented until at least [ten] days after the mailing of the notice. Such notices shall conform with provisions at N.J.A.C. 10:72-5.1(b).
>
> [N.J.A.C. 10:72-1.1(b)(4)(iv).]

Clearly, the SLMB Program is a Medicaid program administered by

DMAHS.[6] Thus, the question to be decided is whether DMAHS is required to

assess eligibility for other Medicaid programs, including the SLMB program,

prior to terminating benefits, and, if the beneficiary is eligible for another

Medicaid program, whether DMAHS is obligated to transition the beneficiary

to the other Medicaid program with no gap in coverage. Faced with a similar

issue, the courts in Stenson v. Blum, 476 F. Supp. 1331 (S.D.N.Y 1979), aff'd

without opinion, 628 F.2d 1345 (2d Cir.), cert. denied, 449 U.S. 885 (1980),

Mass. Ass'n of Older Americans v. Sharp, 700 F.2d 749 (1st Cir. 1983), and

Crippen v. Kheder, 741 F.2d 102 (6th Cir. 1984) concluded the respective

---

[6] DMAHS acknowledged at oral argument before us that the SLMB Program is a Medicaid program, and not a Medicare program as implied in the final agency decision.

Medicaid agencies violated the regulations promulgated under the Social Security Act by automatically terminating the benefits of Medicaid recipients deemed ineligible under one program without determining ex parte whether they qualify under another program.

> In Stenson, the plaintiff was eligible for [M]edicaid benefits as a categorically needy person because of her receipt of SSI benefits. When her SSI benefits were discontinued . . . , the state terminated her [M]edicaid benefits without notice and without providing an opportunity for a hearing. The plaintiff sought classwide injunctive and declaratory relief to require the state to provide notice and an opportunity to be heard prior to termination of [M]edicaid benefits, and an ex parte determination of eligibility for [M]edicaid benefits independent of her eligibility for SSI benefits, before the termination of benefits. The court analyzed [42 C.F.R. § 435.930(b),[7] 42 C.F.R. § 435.916(c),[8] and 42 C.F.R. § 435.1003(b)[9]] and held that they imposed

---

[7] 42 C.F.R. § 435.930(b) requires the agency to "continue to furnish [M]edicaid regularly to all eligible individuals until they are found to be ineligible."

[8] 42 C.F.R. § 435.916(c) then required the agency to "promptly redetermine eligibility when it receives information about changes in a recipient's circumstances that may affect . . . eligibility," and "redetermine eligibility at the appropriate time based on those changes." 42 C.F.R. § 435.916(c)(1) and (2). In 2012, 42 C.F.R. § 435.916 was substantially revised. Among those revisions, 42 C.F.R. § 435.916(f) was added to specify that "[p]rior to making a determination of ineligibility, the agency must consider all bases of eligibility." 42 C.F.R. § 435.916(f)(1).

[9] 42 C.F.R. § 435.1003(b) requires the agency to take prompt action to determine eligibility once it has received notice from the Social Security Administration that SSI benefits have been discontinued.

an obligation upon the state to reconsider ex parte the plaintiff's eligibility for [M]edicaid independent of her eligibility for SSI benefits upon notification of the termination of SSI benefits.

[Crippen, 741 F.2d 105 (citations omitted) (citing Stenson, 476 F. Supp. at 1339-40).]

Similarly, in Sharp,

the plaintiffs were a subclass of families whose AFDC benefits were being terminated because of a change in the law which required that states include the income of stepparents in determining a stepchild's eligibility for AFDC. 42 U.S.C. § 602(a)(31). Such income is specifically excluded from eligibility determinations for [M]edicaid benefits. 42 U.S.C. § 1396a(a)(17)(D). Nevertheless the state terminated [M]edicaid benefits as well as AFDC benefits on this basis. Plaintiffs challenged this action, arguing that the regulations required the state agency to redetermine [M]edicaid eligibility on other grounds before terminating benefits. In this case plaintiffs argued that they were still categorically needy because stepparent income was irrelevant for [M]edicaid purposes. See 42 C.F.R. § 113. The First Circuit cited Stenson . . . with approval, and held that plaintiffs had made "an extremely strong showing of likelihood of success on their claim" that their [M]edicaid benefits had been improperly terminated.

[Crippen, 741 F.2d at 105 (citing Sharp, 700 F.2d at 752-53).]

Finally, in Crippen, the plaintiff's qualification for Medicaid benefits "as a categorically needy person" receiving SSI benefits based on her residency in a licensed "Adult Foster Care [(AFC)] facility . . . for disabled adults" was

terminated when the AFC's license was revoked. 741 F.2d at 104. Although she subsequently reapplied for Medicaid and was found eligible "as a 'medically needy' individual,"[10] retroactive to her termination date, the plaintiff filed a class action "seeking declaratory and injunctive relief against the [agency's] policy of automatically terminating individuals from [M]edicaid solely upon receipt of information that SSI benefits have been terminated without making a prior determination of the individual's eligibility as a medically needy person." Ibid. The plaintiff alleged, among other things, that the policy "violated the regulations promulgated under the Social Security Act and the Act itself." Ibid.

The district court certified the case as a class action but granted the agency's motion for summary judgment. Ibid. Relying on Stenson and Sharp, the Sixth Circuit reversed, holding that

> the [agency's] policy of automatically terminating the benefits of [M]edicaid recipients solely because their SSI benefits have been terminated without determining whether they qualify as medically needy individuals violates the regulations promulgated under the [SSI]. The regulations require instead that, upon receipt of notice that an individual has been terminated from the SSI program, the [agency] must promptly determine ex parte the individual's eligibility

---

[10] The plaintiff also "received Social Security disability benefits since childhood" as a "mentally retarded individual with a convulsive disorder." Ibid.

for [M]edicaid independent of his eligibility for SSI benefits. While this determination is being made, the state must continue to furnish benefits to such individuals.

[Crippen, 741 F.2d at 106-07.]

Relying on Stenson and Sharp, in 1997, the United States Department of Health and Human Services, Center for Medicaid and State Operations, issued a letter to State Medicaid Directors instructing them "to make an ex parte redetermination of the individual's Medicaid eligibility under any other eligibility group" when "an individual is about to lose Medicaid because of the loss of eligibility for cash assistance . . . or . . . SSI benefits." The letter emphasized that "States [were] not permitted to terminate an individual until they have determined that the individual is not eligible under any other eligibility group."

In January 2015, the Centers for Medicare and Medicaid Services in the United States Department of Health and Human Services issued an informational bulletin specifically addressing "[e]nrollment and [r]etention" of low-income "Medicare-Eligible Medicaid enrollees," like petitioners. The bulletin directed state Medicaid agencies "to assess whether [such] individuals are eligible for any other category of Medicaid coverage," such as the SLMB Program, "before terminating . . . Medicaid coverage." Shortly thereafter, in April 2015, DMAHS issued Medicaid Communication No. 15-06, reminding

21

CWAs that pursuant to the 2012 amendment to 42 C.F.R. § 435.916, "prior to termination of redetermined NJ FamilyCare cases,[11] individuals must be assessed for eligibility for all other Medicaid programs" in order to "ensure[] no gap in coverage." See 42 C.F.R. § 435.916(f)(1) (providing that "[p]rior to making a determination of ineligibility, the agency must consider all bases of eligibility").

Applying these principles here, we are persuaded that DMAHS was required to conduct an ex parte assessment of petitioners' eligibility for the SLMB program prior to terminating their benefits, and, based on their undisputed eligibility for the program, DMAHS was obligated to transition them to the SLMB program with no gap in coverage. DMAHS's failure to do so violated federal regulations as well as its own guidance to CWAs. We reject DMAHS's contention that "[petitioners] suffered no prejudice" because the "three months of retroactive benefits once eligibility is established" adequately "addresses the challenges [petitioners] face." On the contrary, such a remedy subverts the purpose of a pre-termination review, which is to prevent unwarranted lapses in Medicaid coverage, and undermines the fundamental

---

[11] In Medicaid Communication No. 14-12, dated November 17, 2014, DMAHS announced that for the sake of simplicity, it was "branding" its "'family' programs and all New Jersey Medicaid programs," "collectively as NJ FamilyCare."

tenet of a program designed to provide financial assistance to a "vulnerable population" subsisting on a low fixed income, like petitioners. <u>E.B. v. Div. of Med. Assistance & Health Servs.</u>, 431 N.J. Super. 183, 205 (App. Div. 2013). We therefore conclude that petitioners met their burden of showing that DMAHS's final decision is arbitrary, unreasonable, and erroneous.

Reversed and remanded for further action consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5749-17T1